# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SMURFIT-STONE CONTAINER CORPORATION, et al.,[1]<br><br>     Debtors.<br><br>SMURFIT-STONE CONTAINER CORPORATION, et al.<br><br>     Plaintiffs,<br>v.<br><br>MARK W. MAYER, LARRY C. WELSH AND BRANDI YOUNG, INDIVIDUALLY, ON BEHALF OF THE SMURFIT-STONE CONTAINER CORPORATION SAVINGS PLAN, THE JEFFERSON SMURFIT CORPORATION HOURLY SAVINGS PLAN, THE SMURFIT-STONE CONTAINER CORPORATION HOURLY SAVINGS PLAN, AND THE ST. LAURENT PAPERBOARD HOURLY SAVINGS PLAN, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>     Defendants. | Chapter 11<br><br>Case No. 09-10235 (BLS)<br><br>Jointly Administered<br><br>**Adv. Pro. No.** _____ |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Smurfit-Stone Container Corporation (1401), Smurfit-Stone Container Enterprises, Inc. (1256), Calpine Corrugated, LLC (0470), Cameo Container Corporation (5701), Lot 24D Redevelopment Corporation (6747), Atlanta & Saint Andrews Bay Railway Company (0093), Stone International Services Corporation (9630), Stone Global, Inc. (0806), Stone Connecticut Paperboard Properties, Inc. (8038), Smurfit-Stone Puerto Rico, Inc. (5984), Smurfit Newsprint Corporation (1650), SLP Finance I, Inc. (8169), SLP Finance II, Inc. (3935), SMBI Inc. (2567), Smurfit-Stone Container Canada Inc. (3988), Stone Container Finance Company of Canada II (1587), 3083527 Nova Scotia Company (8836), MBI Limited/Limitée (6565), Smurfit-MBI (1869), 639647 British Columbia Ltd. (7733), B.C. Shipper Supplies Ltd. (7418), Specialty Containers Inc. (6564), SLP Finance General Partnership (9525), Francobec Company (7735), and 605681 N.B. Inc. (1898). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 150 North Michigan Avenue, Chicago, Illinois 60601.

## VERIFIED COMPLAINT

Plaintiff Smurfit Stone Container Corporation., ("SSCC"), together with its affiliated debtor corporations (collectively, "the Debtors"), debtors and debtors-in-possession in the above-captioned bankruptcy matter, by their attorneys, hereby complain of Defendants Mark W. Mayer, Larry C. Welsh and Brandi Young, individually, and to the extent they are deemed to be acting on behalf of the Smurfit-Stone Container Corporation Savings Plan, the Jefferson Smurfit Corporation Hourly Savings Plan, The Smurfit-Stone Container Corporation Hourly Savings Plan, and the St. Laurent Paperboard Hourly Savings Plan (collectively, the "Plans"), and all others similarly situated participating in the lawsuit filed by the aforementioned named Defendants on May 18, 2009 in the United States District Court for the Northern District of Illinois, Case No. 09-CV-2984, (the "ERISA Lawsuit") and allege upon information and belief as follows:

## THE PARTIES

1. SSCC is a Delaware Corporation and a holding company that conducts its business operations through its wholly-owned subsidiary Smurfit-Stone Container Enterprises, Inc. ("SSCE"), the surviving entity from the November 1998 merger of Jefferson Smurfit Corporation and Stone Container Corporation. SSCE is the direct or indirect parent company of all of the other Debtors and their respective non-debtor affiliates (collectively with SSCC and SSCE, the "Company"). The Company's primary executive offices are located at 150 North Michigan Avenue, Chicago, Illinois.

2. The Company is one of the leading integrated manufacturers of paperboard and paper-based packaging in North America and is one of the world's largest recyclers of paper. The Company sells a broad range of paper-based packaging products,

2

including containerboard, corrugated containers, kraft paper, and point of purchase displays, to a broad range of manufacturers of industrial and consumer products.

3. The Company operates 162 manufacturing facilities that are primarily located in the United States and Canada, including 14 paper mills (12 in the United States and 2 in Canada), 122 container plants (102 in the United States (including 1 in Puerto Rico), 16 in Canada, 3 in Mexico, and 1 in China), and 26 reclamation plants (all in the United States). The Company also owns approximately one million acres of timberland in Canada and operates wood harvesting facilities in Canada and the United States. The Company employs approximately 21,250 employees, of whom approximately 17,410 are based in the United States. For the fiscal year ended December 31, 2007, the Company recorded revenues of approximately $7.420 billion, resulting in a net loss of approximately $115 million for fiscal year 2007. For the quarterly period ended September 30, 2008, the Company reported approximately $7.450 billion in total assets and $5.582 billion in total liabilities on a consolidated basis.

4. The Company's financial performance depends primarily upon the market demand for its products and the prices that it receives for such products. The recent downturn in the global economy has resulted in an unprecedented decline in demand for the Company's products, leading to increased inventory levels and downward pressure on the Company's operating income. At the same time, substantial price competition and volatility in the pulp and paper industry has resulted in decreased prices for the Company's products which, coupled with the Company's leveraged financial position and the recent volatility in energy prices and the cost of raw materials, have adversely impacted the Company's financial performance. In addition, recent and dramatic changes in the capital markets have adversely impacted the Company's

DB02:8321778.1     068063.1001

prospects for refinancing its revolving credit and securitization facilities. Because of these factors, the Debtors have found it necessary to seek chapter 11 protection.

5. On January 26, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code"). On January 27, 2009, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only, and they are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On February 5, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

8. Defendant Mayer, upon information and belief, is a resident of the state of Illinois. He asserts that he was a participant in the Smurfit-Stone Container Corporation Savings Plan and maintained an investment in the Smurfit-Stone Container Corporation Common Stock Fund (the "Fund") in his individual account in that Plan during what he alleges to be a "Class Period" from January 28, 2008 to the present.

9. Defendant Welsh, upon information and belief, is a resident of the state of Illinois. He asserts that he was a participant in the Smurfit-Stone Container Corporation Hourly Savings Plan and maintained an investment in the Fund in his individual account in that Plan the alleged Class Period.

10. Defendant Young, upon information and belief, is a resident of the state of Arkansas. She asserts that she was a participant in the Jefferson Smurfit Corporation Hourly Savings Plan and maintained an investment in the Fund in her individual account in that Plan during the alleged Class Period.

11. Defendants Mayer, Welsh and Young together brought the ERISA Lawsuit purportedly on behalf of themselves individually, the Plans, and a potential class of all current and former participants in the Plans for whose individual accounts the Plans held shares of SSCC common stock during the Class Period. They state in their Complaint that there are, "at a minimum, thousands of members" of the potential class.

## NATURE OF ACTION

12. This action seeks an extension of the automatic stay and in conjunction therewith (or in the alternative) temporary and preliminary injunctive relief to apply to Defendant's ERISA Lawsuit.

13. The ERISA Lawsuit names as defendants the Debtors' CEO, Patrick Moore, and the Administrative Committee of the Smurfit-Stone Container Corporation Retirement Plans and its individual members, including Paul K. Kaufmann and John Does 1-20 (collectively, the "ERISA Defendants"), all of whom are key executives and officers of the Debtors and deeply engaged in bankruptcy-related work on the Debtors' behalf

14. The allegations in the Lawsuit are extensive and complex. The Complaint is 49 pages long, and includes four distinct Counts and 169 numbered paragraphs. The Defendants in this action brought by the Debtors, who are the Plaintiffs in the ERISA Lawsuit (to avoid confusion, hereinafter the "ERISA Plaintiffs"), assert that the ERISA Defendants breached their fiduciary duties to the Plans and to the ERISA Plaintiffs over the course of more than a year, with many "millions of dollars" lost as a result. Plaintiffs will, upon information and

5
DB02:8321778.1                                                                                                                                        068063.1001

belief, seek broad discovery regarding these allegations, as their claims depend at least in part on deeply factual questions of what was known, at what points in time, by whom, and what was done as a result.

15. Such a Lawsuit at this time deeply threatens the Debtors' ability successfully to reorganize. Due to strong indemnification requirements, whatever recovery the ERISA Plaintiffs may be awarded in the ERISA Lawsuit ultimately will be the Debtors' responsibility. That recovery, according to ERISA Plaintiffs, may be "millions of dollars," potentially exceeding, and certainly diminishing, the Debtors' available insurance. Moreover, defending the ERISA Lawsuit will take tremendous time and energy on the part of the very executives integral to developing, negotiating, and gaining approval of Debtors' plan of reorganization.

16. It is well established that the automatic stay of section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a) (the "Automatic Stay"), may be extended pursuant to section 105(a) of the Bankruptcy Code to encompass non-debtor third parties in certain circumstances, including, specifically, where, as here, due to indemnification requirements the Debtor is the real party in interest in the outside litigation and where the individual defendants play such a significant role in furthering the Debtors' efforts to reorganize that diverting their attention in order to defend the lawsuit would hinder those efforts. Accordingly, Debtors now seek an order extending the Automatic Stay to enjoin any proceedings in the ERISA Lawsuit and thus prevent any further distraction from the Debtors' most pressing task, namely preserving the assets of their estates for all stakeholders while developing a plan of reorganization to allow the Debtors successfully to emerge.

6
DB02:8321778.1                                                                                                    068063.1001

## JURISDICTION AND VENUE

17. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), both in that this is a matter concerning the administration of the Debtors' estates and that it seeks to modify the automatic stay. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 362(a) of the Bankruptcy Code.

## BACKGROUND

*The ERISA Lawsuit*

18. On May 18, 2009, ERISA Plaintiffs Mark. W. Mayer, Larry C. Welsh, and Brandi Young, on behalf of themselves, and purportedly on behalf of the Plans and all others similarly situated, filed a 49-page, four Count, 169 paragraph ERISA Complaint (the "ERISA Complaint") in the United States District Court for the Northern District of Illinois, against the ERISA Defendants. A copy of the ERISA Complaint is attached as exhibit A hereto.

19. In the ERISA Complaint, the ERISA Plaintiffs allege that the ERISA "Defendants breached their fiduciary duties owed to the Plans and the Participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550." Complaint ¶ 2. They allege that, "As a result of these breaches, Defendants are liable to the Plans for all losses resulting from each such breach of fiduciary duty." Complaint ¶ 2. Plaintiffs also seek equitable relief and their attorneys' fees and expenses. Complaint ¶¶ 2, 169.

20. The ERISA Complaint levels a host of detailed allegations against the ERISA Defendants, essentially asserting in Count I that they had control over the assets of the various Smurfit Savings Plans that the ERISA Plaintiffs claim to represent, and that they violated

their fiduciary duties by investing those assets in the Fund from January 28, 2008, to the present even though by that point, according to Plaintiffs, "the Plans' continued investment in the Fund was imprudent because the Fund was an excessively risky investment for retirement assets in light of the Company's dire and perilous financial condition." Complaint ¶ 3; see also Complaint ¶¶ 110-128.

21. The ERISA Plaintiffs state with respect to Count II that their claims "arise out of SSCC's misrepresentations and failure to disclose material adverse facts concerning the Company's business conditions, debt management and viability." Complaint ¶ 4; see also Complaint ¶¶ 129-142. "In particular," ERISA Plaintiffs continue, ERISA "Defendants knew or should have known that the Company failed to disclose material adverse information regarding significant problems concerning the company's debt management, including the difficulties that SSCC was experiencing in renewing its revolving credit facilities which were required for the company's day-to-day operations." Complaint ¶ 4. As a result, ERISA Plaintiffs allege that they artificially inflated the value of Fund and SSCC's stock shares. Complaint ¶ 4.

22. The ERISA Plaintiffs allege in Count III "that those Defendants who had a duty to appoint and monitor those fiduciaries with authority or control over the Plans' assets breached their duty to appoint and monitor." ERISA Complaint ¶ 6; see also ERISA Complaint ¶¶ 143-152.

23. In Count IV, the ERISA Plaintiffs allege that the Defendants each have co-fiduciary liability because they "knew of the breaches by other fiduciaries and made no efforts . . . to remedy those breaches," ERISA Complaint ¶ 157, "participated in the management of the Plains' improper investment in the Fund and . . . knowingly participated in the improper

8

management of that investment by the other Defendants," ERISA Complaint ¶ 159, and, by failing to monitor, "enabled [other] Defendants to breach their duties," ERISA Complaint ¶ 161.

24. In each Count, and throughout the ERISA Complaint, the allegations concern what the pertinent ERISA Defendants knew or should have known of the Debtors' declining financial health, when the ERISA Defendant knew it, his or her actions or failures to act with respect to that knowledge, and his or her motivations for those actions or failures to act.

25. Upon information and belief, ERISA Plaintiffs will seek extensive discovery regarding the facts underlying their allegations, including requests for the production of all relevant documents, written interrogatories, and deposition testimony of, at a minimum, each of the ERISA Defendants.

26. In addition, the ERISA Plaintiffs' class allegations, concerning what the ERISA Plaintiffs allege to be a putative class of "at a minimum, thousands of members," ERISA Complaint ¶ 20, may separately need to be litigated.

27. Even the question of who exactly is an ERISA Defendant may require discovery and litigation in light of the ERISA Plaintiffs' "John Doe" designations.

28. The Complaint does not state with specificity the damages that Plaintiffs seek, but it repeatedly claims that "as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans, and indirectly Plaintiff and the other Class members, lost millions of dollars in retirement savings," Complaint ¶¶ 127, 141, 151, 162 and that the Defendants "are liable to restore the losses to the Plans," Complaint ¶¶ 128, 142, 152, 163. Thus, at a minimum, "millions of dollars" are at issue. ERISA Plaintiffs also seek attorneys fees. Complaint ¶ 169.

29. If the ERISA Plaintiffs were to allege that their purported losses should be calculated by measuring the loss in value of SSCC shares invested in the Fund over the course of

their alleged Class Period from January 28, 2008 to the present, their demand could amount to several tens of millions of dollars.

*The ERISA Defendants*

30. The ERISA Defendants in the ERISA Lawsuit all are officers or senior executives of the Debtors, including the Debtors' Chief Executive Officer ("CEO") and each member of the Administrative Committee (the "Administrative Committee") that administers the Plans.

31. Named ERISA Defendant Patrick J. Moore is Chairman of the Board and CEO of SSCC. Paul K. Kaufmann is a Senior Vice President and the Corporate Controller of SSCC. Both are corporate officers, and Kaufmann is a member of the Administrative Committee. The "John Does," whom the Complaint identifies as "other SSCC or SSCE employees and/or members of the Committee who exercised authority or control over the Plans and/or over the Plans' investments," presumably include Ron Hackney and Brian Gardner, the remaining current members of the Administrative Committee. Mr. Hackney is a corporate officer, and Mr. Gardner is a senior executive.

32. The Defendants each are fully indemnified by the Debtors with respect to their activities and good-faith decisions or actions on behalf of the Administrative Committee or as otherwise relating to the administration or operation of the Plans. The Savings Plans named in the Lawsuit, which are attached hereto as Exhibits B, C, D, and E[2] and incorporated by reference herein, all include the identical indemnification provision. This provision states that:

---

[2] Exhibit B is the Smurfit-Stone Container Corporation Savings Plan; Exhibit C is the Jefferson Smurfit Corporation Hourly Savings Plan; Exhibit D is the Smurfit-Stone Container Corporation Hourly Savings Plan; and Exhibit E is the St. Laurent Paperboard Hourly Savings Plan. For ease of reference to the actual Plan documents, certain amendments not germane to the indemnification issue discussed herein have been excluded.

> To the maximum extent permitted by law, no member of the Administrative Committee shall be personally liable by reason of any contract or other instrument executed by him or her or on his or her behalf in his or her capacity as a member of such Administrative Committee nor for any mistake of judgment made in good faith, and the Company shall indemnify and hold harmless, directly from its own assets (including the proceeds of any insurance policy, the premiums of which are paid from the Company's own assets), each member of such Administrative Committee and each officer, employee, or director of the Company to whom any duty or power relating to the administration or interpretation of the Plan or to the management and control of the assets of the Plan may be delegated or allocated, against any cost or expense (including counsel fees) or liability (including any sum paid in settlement of a claim with the approval of the Company) arising under any act or omission to act in connection with the Plan, unless arising out of such person's own fraud or bad faith.

Ex. B at 44-45; Ex. C at 38-39; Ex. D at 43; Ex. E at 44-45.

33. SSCC's by-laws (the "By-Laws") also provide indemnification protection to officers and directors of the Company. The By-Laws, which are attached as Exhibit F and incorporated by reference herein, state that the Company will indemnify:

> any person who was or is a party or threatened to be made a party to any threatened, pending or completed action suit or proceeding . . . by reason of the fact that such person is or was a director or officer of the Corporation, or is or was a director of officer of the Corporation serving at the request of the Corporation as a director, officer, trustee, administrator, employee, or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts (including attorneys' fees paid in settlement) actually and reasonably incurred by such person in connection with such action, suit or proceeding if such person acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Corporation . . . .

Ex. F at 15. This right of indemnification is subject only to a Board determination that the individual in fact "acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Corporation." Ex. F at 15.

DB02:8321778.1        068063.1001

34. Each ERISA Defendant, beyond his or her normal duties and his or her role on the Administrative Committee, is deeply involved in the formulation and development of the Debtors' strategy and the planning process for their emergence from bankruptcy, including the development of the plan of reorganization.

35. ERISA Defendant Patrick J. Moore is the Chairman and Chief Executive Officer. As the chief executive there is no person more integral to all aspects of the Debtors' operations and their current posture as debtors in the bankruptcy process. Mr. Moore has served as CEO for more than seven years. Prior to that time, he served as the Debtors' Chief Financial Officer. Among other things, Mr. Moore is particularly involved with the Debtors' finances and the financial planning that will form the backbone of any potential plan of reorganization. Additionally, as CEO he leads all aspects of strategic planning, including those areas connected to the debtors' operations and the bankruptcy process.

36. ERISA Defendant Paul K. Kaufmann's duties include oversight and management of the accounting and internal control functions throughout the Company, including tax, internal audit and external reporting. As a result of the bankruptcy filing, Mr. Kaufmann's duties have been significantly expanded to include oversight of the monthly and periodic bankruptcy accounting and reporting requirements for the multiple Debtor entities that are filed in the Bankruptcy Court and additional materials provided to certain of the Debtors' lenders and the U.S. Trustee. Mr. Kaufmann is also involved in overseeing the administrative and tax claims processes to ensure payments are made as required, and he is part of the critical finance team involved in determining the appropriate capital and tax structure to exit bankruptcy, including working with outside experts to determine the appropriate fresh start accounting upon exit from bankruptcy.

37.     Presumptive ERISA Defendant Ron Hackney is the Debtors' Sr. Vice-President Human Resources, an officer of the Company, and a member of the Administrative Committee. His duties include the oversight and management of all HR, labor, benefits and compensation matters within the entire organization. These duties include, for example, in 2009 alone, providing oversight for some 54 sets of collective bargaining negotiations at the Debtors' various locations throughout the U.S. and Canada. In addition to his normal workload, Mr. Hackney now must focus much of his time specifically on the bankruptcy and reorganization process, including strategic decisions related to layoffs, severance plan and incentive plan issues, labor issues, pension plans and plant closings. These are all areas of vast import in the Debtors' attempt to successfully reorganize. As an indication of the importance of these issues to these bankruptcy proceedings, two members of the Committee are the The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and the Pension Benefit Guaranty Corporation.

38.     Presumptive ERISA Defendant Brian Gardner is the Debtors' Director of Corporate Finance and Pension Investments and a member of the Administrative Committee. Mr. Gardner is responsible for monitoring the Debtors' compliance with their debtor-in-possession financing ("<u>DIP Financing</u>") agreement on a monthly basis as well as providing all DIP Financing-related reporting requirements on a weekly/monthly basis. He is also working closely with the Debtors' advisors to determine the appropriate capital structure for the Debtors' exit from bankruptcy as well as monitoring capital markets and the Debtors' ability to raise new funds in conjunction therewith. Mr. Gardner also is responsible for oversight of the Debtors' cash position investment and determining the appropriate use of cash, including monitoring all of the Debtors' defined benefit and defined contribution plan investment managers. He has

13
DB02:8321778.1                                                                                                    068063.1001

additionally been charged with supporting the Debtors' bankruptcy advisors in all areas of treasury management.

*The Status of the Debtors*

39. At this crucial point during the Debtors' bankruptcy proceedings, the ERISA Defendants are, and must be, devoting all of their energies toward ensuring the Debtors' successful reorganization. It is a complex endeavor. With massive manufacturing operations spanning North America, restructuring the Debtors' businesses will require the intense and coordinated efforts of all of the Debtors' officers and senior executives, including the ERISA Defendants and many others as well. Anything that materially interferes with the ERISA Defendant' ability to attend to the Debtors' restructuring will necessarily thwart the Debtors' reorganization efforts.

40. Although nominally against the ERISA Defendants, the assets ultimately at stake in the Lawsuit belong to the estates of the Debtors. In accordance with the terms of the Plans and By-Laws, the Debtors are obligated to indemnify each of the ERISA Defendants in full for their actions in connection with the Plans, and any potential insurance coverage may be insufficient to protect the Debtors' assets from damages resulting from the ERISA Lawsuit that as plead may reach the tens of millions of dollars.

41. The Debtors maintain three fiduciary insurance policies, a primary policy through Axis Insurance Company, with a $10,000,000 aggregate coverage maximum and a $100,000 deductible per claim, (the "Primary Policy"), an excess policy through Chubb that adds $10,000,000 to the available aggregate coverage (the "Chubb Policy") and a second excess policy through Navigators Insurance Company that adds $5,000,000 more in aggregate coverage (the "Navigators Policy"). Pursuant to the terms of the Primary Policy, which is attached as

Exhibit G and incorporated by reference herein, this coverage extends to the Debtors and any individuals who are past, present, or future directors, officers, or trustees of the Debtors or of a Plan, in their fiduciary or administrator capacity, with respect to a violation of any "of the responsibilities, obligations or duties imposed on Fiduciaries by ERISA" or "any matter claimed against [any of them] by reason of his, her or its status as a fiduciary." Ex. G, Fiduciary Liability Insurance Policy at pp. 5-7.

42. Even assuming that this fiduciary coverage would apply to any losses in the ERISA Lawsuit,[3] the total aggregate maximum coverage of the three policies added together would be limited to $25,000,000. This amount is less than what the ERISA Plaintiffs potentially are seeking.

43. To the extent that the "millions of dollars" ERISA Plaintiffs say they are seeking does not exceed the aggregate insurance limits, whatever the number of "millions" that are involved would substantially diminish the aggregate insurance funds available to the Debtors in the event of other eligible claims.

44. Because the Debtors' insurance also applies directly to the ERISA Defendants, even if the indemnification provisions of the Plan and the By-Laws were deemed not to apply, any potential losses by the ERISA Defendants would diminish the amount of aggregate insurance funds remaining to the Debtors for other possible claims.

## CAUSE OF ACTION

### COUNT I: Extension of Automatic Stay

45. The Debtors reallege the above paragraphs 1-41 as if stated fully herein.

---

[3] To date, no insurance coverage has been confirmed under any of these policies with respect to the ERISA Lawsuit.

46. The automatic stay of Section 362 of the Bankruptcy Code, by its terms, directly applies only to the debtors. Nonetheless, courts widely recognize that even though non-debtor third parties do not fall within the protection of the automatic stay, at times Bankruptcy Code section 105 must be invoked on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them.

47. The automatic stay has generally been extended pursuant to section 105 of the Bankruptcy Code to the 'unusual situation' where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third-party is entitled to indemnification by the debtor for any judgment taken against it.

48. In addition, because the ability successfully to reorganize depends not only on the preservation of a debtor's assets, but also on the skill and effort of those officers, directors, and employees of the Debtors charged with managing the business in bankruptcy and with developing a plan of reorganization, litigation diverting critical management resources from the reorganization effort would also constitute 'unusual circumstances' justifying extending the automatic stay to nondebtor third parties.

49. The ERISA Lawsuit in this case, although nominally against the ERISA Defendants, ultimately places the Debtor's assets at stake, due to the Debtors' indemnification obligations and the fact that any potential insurance coverage may be insufficient to protect the Debtors' assets.

50. Moreover, proceeding with the ERISA Lawsuit will frustrate Debtors' efforts to reorganize. The ERISA Defendants all are officers or high-ranking executives of the Debtors and critical to the Debtors' development of a new business strategy and a plan of

reorganization. It is an immensely complex effort. They cannot be spared during this critical time to participate in discovery and in preparations to defend the ERISA Lawsuit.

51. Because of the unusual circumstance present in these bankruptcy cases, Debtors seek an order pursuant to section 105(a) enjoining any further proceedings in the ERISA Lawsuit pending the expiration date of the automatic stay applicable to the Debtors or further action of this Bankruptcy Court.

**COUNT II: Temporary Restraining Order And Preliminary Injunction**

52. The Debtors reallege the above paragraphs 1-41 as if stated fully herein.

53. In conjunction with, or in alternative to, an extension of the automatic stay as set forth in Count I, Debtors also are entitled to a temporary restraining order and preliminary injunction pursuant to section 105(a) of the Bankruptcy Code and traditional injunction standards.

54. Debtors have a reasonable likelihood of success on the merits of their bankruptcy proceedings.

55. The hardship to the Debtors from denying the injunctive relief requested herein will outweigh any hardship to the ERISA Plaintiffs from staying their ERISA Lawsuit until the Debtors' have successfully emerged from bankruptcy.

56. There is a strong public interest in promoting a successful Chapter 11 reorganization, and the public interest therefore favors granting the injunction.

57. In light of the foregoing, Debtors seek a temporary restraining order and preliminary injunction pursuant to section 105(a) of the Bankruptcy Code enjoining any further proceedings in the ERISA Lawsuit pending the expiration date of the automatic stay applicable to the Debtors or further action of this Bankruptcy Court.

DB02:8321778.1  068063.1001

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Smurfit Stone Container Corporation together with its affiliated debtor corporations respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, and enter an Order or Orders granting Plaintiffs:

    a.    A temporary restraining order, as well as a preliminary injunction, staying and enjoining all further proceedings in the ERISA Lawsuit until the automatic stay applicable to the Debtors shall expire, or pending subsequent Order of this Court; and

    b.    Such other relief as this Court deems just and equitable.

Dated: Wilmington, Delaware
June 18, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Brian J. Gold
Matthew A. Clemente
Dennis M. Twomey
James D. Weiss
Bojan Guzina
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION

19
DB02:8321778.1                                                                                                          068063.1001

# VERIFICATION OF COMPLAINT

I, Craig A. Hunt, a citizen of the United States, a resident of St. Louis County, Missouri, and Senior Vice President and General Counsel on behalf of Smurfit-Stone Container Corporation, hereby declare that I have read the foregoing Verified Complaint and verify that the factual allegations set forth therein are true and correct.

Dated: June 17, 2009

Subscribed to and sworn
before me this 17th day of
June, 2009.

"OFFICIAL SEAL"
Irma M. Torres
Notary Public, State of Illinois
My Commission Expires Jan. 22, 2010

_____
Notary Public

My Commission expires: 1/22/2010