## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**SMURFIT-STONE CONTAINER CORPORATION, et al.,**<br><br>Debtors. | **Chapter 11 Case No. 09-10235 (BLS)**<br><br>**(Jointly Administered)** |
| **SMURFIT-STONE CONTAINER CORPORATION, et al.,**<br><br>Plaintiffs,<br>v.<br><br>**MARK W. MAYER, LARRY C. WELSH, AND BRANDI YOUNG, INDIVIDUALLY, ON BEHALF OF THE SMURFIT-STONE CONTAINER CORPORATION SAVINGS PLAN, THE JEFFERSON SMURFIT CORPORATION HOURLY SAVINGS PLAN, THE SMURFIT-STONE CONTAINER CORPORATION HOURLY SAVINGS PLAN, AND THE ST. LAURENT PAPERBOARD HOURLY SAVINGS PLAN, AND ON BEHALF OF ALL OTHERS SIMILARY SITUATED,**<br><br>Defendants. | **Adv. Proceeding No. 09-51067 (BLS)** |

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR
## <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................iii

INTRODUCTION ..........................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING....................3

SUMMARY OF ARGUMENT...........................................................................3

STATEMENT OF FACTS.................................................................................3

ARGUMENT.................................................................................................5

I.     THE HIGH BURDEN FACING ONE WHO SEEKS A PRELIMINARY INJUNCTION.........................................................................................5

II.    COURTS DO NOT SHIELD NON-DEBTOR CORPORATE OFFICERS FROM LIABILITY FOR THEIR INDEPENDENT VIOLATIONS OF ERISA.........................................................................8

III.   THE COURT SHOULD NOT PRELIMINARILY ENJOIN THE ERISA LITIGATION BECAUSE DEBTORS HAVE NOT DEMONSTRATED THAT THE "UNUSUAL CIRCUMSTANCES" TEST HAS BEEN MET..............11

      A.    Debtors Are Not The Real Parties In Interest...........................12

            1.    Indemnification Does Not Justify An Injunction.....................12

            2.    Insurance Does Not Justify An Injunction....................................16

      B.    Prosecution Of The ERISA Litigation Will Not Impede Debtors' Reorganization Efforts..............................................19

IV.   THE DEBTORS DO NOT SATISFY THE RULE 65 STANDARD FOR A PRELIMINARY INJUNCTION....................................................................27

      A.    Debtors Do Not Satisfy The Exacting Standards For A Preliminary Injunction...........................................................27

      B.    The Debtors Have Not Demonstrated A Substantial Likelihood Of Imminent Irreparable Harm........................................................28

      C.    The Balance Of Hardships Favors The ERISA Plaintiffs, Who Would Face Substantial Prejudice If The ERISA Litigation Were Enjoined........30

      D.    The Public Interest Would Be Dis-Served If The ERISA Litigation Were To Be Enjoined...................................................................32

CONCLUSION...........................................................................................................35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.H. Robins Co. v. Piccinin*,
    788 F.2d 994 (4th Cir. 1986) ..................................................................12, 14, 26

*Alert Holdings, Inc. v. Interstate Protective Servs., Inc.*,
    148 B.R. 194 (Bankr. S.D.N.Y. 1992) ..................................................29

*Am. Imaging Servs. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*,
    963 F.2d 855 (6th Cir. 1992) ....................................................................7

*Baldwin-United Corp. v. Paine Webber Group, Inc.*,
    57 B.R. 759 (S.D. Ohio 1985) ..............................................................29

*Brengettys v. LTV Steel Hourly Pension Plan*,
    241 F.3d 609 (7th Cir. 2001) ...............................................................11

*Brown v. Jevic*,
    2009 WL 2342731 (3d Cir. Jul. 31, 2009) .............................................8

*Buchanan v. Golden Casting Corp. Hourly Health Benefit Plan*,
    No. 4:03-cv-151-SEB-WGH, 2003 WL 22951936
    (S.D. Ind. Oct. 10, 2003)…..............................................................10, 11

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
    116 B.R. 31 (S.D.N.Y. 1990) ...............................................................10

*Ches v. Archer*,
    827 F. Supp. 159 (W.D.N.Y. 1993) ......................................................11

*Chesapeake Crossing Associates v. TJX Companies, Inc.*,
    1992 WL 469801 (E.D. Va. 1992) .......................................................10

*Commonwealth Oil Ref. Co. v. EPA (In re Commonwealth Oil Ref. Co.)*,
    805 F.2d 1175 (5th Cir. 1986), *cert. denied*, 483 U.S. 1005 (1987) .....................7

*Credit Alliance Corp. v. Williams*,
    851 F.2d 119 (4th Cir. 1988) ...................................................................8

*Crumpler v. Wetsel Seed Co.*
    115 B.R. 79 (Bankr. E.D. Va. 1990) .......................................................8

*Divane v. A & C Elec. Co., Inc.*,
    193 B.R. 856 (N.D. Ill. 1996) ...............................................................12

*Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co.*,
    54 B.R. 353 (Bankr. W.D. Wis. 1985) .................................................................29

*Duval v. Gleason*,
    No. C-90-0242, 1990 WL 261364 (N.D. Cal. Oct. 19, 1990) ...............................9

*E.I. DuPont De Nemours & Co. v. Fine Arts Reprod. Co., et al.*,
    No. 93 Civ. 2462 (KMW), 1995 WL 312505 (S.D.N.Y. May 22, 1995) .............9

*Gray v. Hirsch*,
    230 B.R. 239 (S.D.N.Y. 1999) ............................................................................12

*Holland v. High Power Energy*,
    248 B.R. 53 (S.D.W. Va. 2000) ..........................................................................10

*In re Adelphia Communications Corp.*,
    298 B.R. 49 (S.D.N.Y. 2003) ..............................................................................27

*In re All Seasons Resorts, Inc.*,
    79 B.R. 901 (Bankr. C.D. Cal. 1987) ............................................................14, 26

*In re Am. Film Techs*,
    175 B.R. 847(D. Del. 1994) .................................................................................15

*In re American Continental Corp./Lincoln Savings & Loan Sec. Lit.*,
    MDL 834 (D. Ariz.) .............................................................................................34

*In re Anje Jewelry Co., Inc.*,
    47 B.R. 485 (E.D.N.Y. 1983) ..............................................................................29

*In re Arrow Huss, Inc.*,
    51 B.R. 853 (Bankr. D. Utah 1985) .....................................................................27

*In re Asbestos School Litig.*,
    1991 WL 84038 (E.D. Pa. May 10, 1991) ..........................................................10

*In re Babcock & Wilcox Co.*,
    No. 00-3408, 2001 WL 536305 (E.D. La. 2001) .................................................7

*In re Brentano's, Inc.*,
    36 B.R. 90 (S.D.N.Y. 1984) ................................................................................27

*In re Calpine Corp.*,
    354 B.R. 45 (Bankr. S.D.N.Y. 2006) ..................................................................28

*In re CHS Electronics, Inc.*,
   261 B.R. 538 (Bankr. S.D. Fla. 2001) ................................................................17

*In re Codfish Corp.*,
   97 B.R. 132, 135 (Bankr. D.P.R. 1988) ..............................................................15

*In re Combustion Engineering, Inc.*,
   391 F.3d 190 (3d Cir. 2004) ................................................................................27

*In re Continental Air Lines, Inc.*,
   61 B.R. 758 (S.D. Tex. 1986) ..............................................................................31

*In re Costa & Head Land Co.*,
   68 B.R. 296 (N.D. Ala. 1986) ..............................................................................32

*In re Crazy Eddie Sec. Litigation*,
   104 B.R. 582 (E.D.N.Y. 1989) ..............................................................................9

*In re Daisy Sys. Sec. Litig.*,
   132 B.R. 752 (N.D. Cal. 1991) ............................................................................16

*In re Desa Holdings Corp.*,
   353 B.R. 419 (Bankr. D. Del. 2006) ......................................................................6

*In re Equity Funding Corp. of America Sec. Lit.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) .....................................................................34

*In re Excel Innovations, Inc.*,
   502 F.3d 1086 (9th Cir. 2007) ...............................................................................7

*In re Family Health Servs.*,
   105 B.R. 937 (Bankr. C.D. Cal. 1999) .................................................................16

*In re First Alliance Mortg. Corp.*,
   264 B.R. 634 (C.D. Cal. 2001) ............................................................................15

*In re First Central Fin. Corp.*,
   238 B.R. 9 (Bankr. E.D.N.Y. 1999) .......................................................................9

*In re Fowler Floor & Wall Covering Co.*,
   93 B.R. 55 (Bankr. M.D. Pa. 1988) .....................................................................32

*In re GCO Svcs., LLC*,
   324 B.R. 459 (Bankr. S.D.N.Y. 2005) .................................................................12

*In re Global Indus. Techs.*,
     303 B.R. 753 (W.D. Pa. 2004) ............................................................................26

*In re Granite Partners, L.P.*,
     194 B.R. 318 (Bankr. S.D.N.Y. 1996) ..............................................................27

*In re Johns-Manville Corp.*,
     26 B.R. 405 (Bankr. S.D.N.Y. 1983) ..........................................................10, 14
     26 B.R. 420 (Bankr. S.D.N.Y. 1983) ..........................................................25, 26

*In re King Resource Co. Sec. Lit.*,
     420 F. Supp. 610 (D.C. Colo. 1976) ..................................................................34

*In re KMart Corp.*,
     285 B.R. 679 (Bankr. N.D. Ill. 2002) ..................................................................9

*In re Lazarus Burman Associates., L.B.*,
     161 B.R. 891 (E.D.N.Y. 1993) ...........................................................................25

*In re Leslie Fay Companies, Inc.*,
     207 B.R. 764 (Bankr. S.D.N.Y. 1997) ..............................................................17

*In re Louisiana World Exposition, Inc.*,
     832 F.2d 1391 (5th Cir. 1987) ............................................................................16

*In re MacDonald  / Assocs., Inc.*,
     54 B.R. 865 (Bankr. D.R.I. 1985) ......................................................................24

*In the Matter of Edgeworth*,
     993 F.2d 51 (5th Cir. 1993) ................................................................................16

*In re Medical Asset Mgmt, Inc.*,
     349 B.R. 659 (W.D. Pa. 2000) ...........................................................................28

*In re Metal Center, Inc.*,
     31 B.R. 458 (Bankr. D. Conn. 1983) .................................................................10

*In re Metro Transp. Co.*,
     64 B.R. 968 (Bankr. E.D. Pa. 1986) ..................................................................27

*In re Phar-Mor Securities Litigation*,
     164 B.R. 903 (W.D. Pa. 1994) .............................................................................8
     166 B.R. 57 (W.D. Pa. 1994) .............................................................................10

*In re Philadelphia Newspapers, LLC*,
    407 B.R. 606 (E.D. Pa. 2009) ........................................................................7, 28

*In re Provincetown Boston Airline*,
    52 B.R. 620 (Bankr. M.D. Fla. 1985) ...................................................28

*In re Quintus Corporation*,
    Case No. 01-501 (Bankr. D. Del., Apr. 10, 2002) (Walrath, J.)...........................18

*In re Reliance Acceptance Group, Inc.*,
    235 B.R. 548 (D. Del. 1999) ..........................................................8, 13, 14, 16, 17

*In re Rickel Home Centers, Inc.*,
    199 B.R. 498 (D. Del. 1996) ...............................................................11

*In re RNI Down Corp.*,
    369 B.R. 174 (Bankr. D. Del. 2007) .............................................................12, 13

*In re SN Liquidation*,
    388 B.R. at 579 (D. Del. 2008) ............................................................19

*In re Sudbury, Inc.*,
    140 B.R. 461 (N.D. Ohio 1992) ...........................................................7

*In re Third Eighty-Ninth Assoc.*,
    138 B.R. 144 (S.D.N.Y. 1992) ............................................................27

*In re Touch Am. Holdings, Inc.*,
    No. 03-11915-KJC, 2009 WL 2341835 (Bankr. D. Del. 2009) ...........................12

*In re TRS, Inc.*,
    76 B.R. 805, 809 (D. Kan. 1987) .........................................................24

*In re Uni-Marts, LLC*,
    405 B.R. 113 (D. Del. 2009) ............................................................8, 14

*In re United Health Care Org.*,
    210 B.R. 228 (S.D.N.Y. 1997) ...............................................................8

*In re University Medical Ctr.*,
    82 B.R. 754 (Bankr. E.D. Pa. 1988) ........................................................20, 27

*In re Venture Properties, Inc.*,
    37 B.R. 175 (Bankr. N.H. 1984) ..........................................................32

*In re W.R. Grace & Co.,*
    386 B.R. 17 (D. Del. 2008) ..............................................................7, 26
    2004 WL 954772 (Bankr. D. Del. Apr. 29, 2004) ...............................15
    115 Fed. Appx. 565 (3d Cir. 2004) .....................................................26

*In re Wedgeworth v. Fibreboard,*
    706 F.2d 541 (5th Cir. 1983) ..........................................................9, 30

*In re Wolf Fin. Group, Inc.,*
    No. 94-B-44009, 1994 WL 913278 (Bankr. S.D.N.Y. Dec. 15, 1994) ...............18

*In re Zale Corp*
    62 F.3d 746 (5th Cir. 1995) ...............................................................7

*In re Zenith Lab. Inc.,*
    104 B.R. 659 (D.N.J. 1989) ...............................................................16

*Kadesh v. United Airlines, Inc.,*
    No. 02-cv-9058, 2003 WL 435632 (S.D.N.Y. Feb. 24, 2003) .............................6

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) .........................................................................30

*LaRue v. DeWolff, Boberg & Associates, Inc.,*
    128 S. Ct. 1020 (2008) ......................................................................33

*Leahy v. Trans Jones, Inc.,*
    996 F.2d 136 (6th Cir. 1993) ..............................................................11

*Levesque v. Kelly Cmmc'n, Inc., et al.,*
    164 B.R. 29 (S.D.N.Y. 1994) ................................................................9

*Majkowski v. Am. Imaging Mgmt. Svcs.,*
    913 A.2d 572 (Del. Ch. 2006) .............................................................13

*Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.),*
    801 F.2d 60 (2d Cir. 1986) ............................................................14, 26

*Maritime Elec. Co., Inc. v. United Jersey Bank,*
    959 F.2d 1194 (3d Cir. 1991) ..............................................................8

*May v. Bigmar,*
    838 A.2d 285 (Del. Ch. 2003) .............................................................13
    aff'd 854 A.2d 1158 (Del. Supr. 2004) ....................................................4

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) ................................................................28

*McCartney v. Integra Nat'l Bank, North,*
    106 F.3d 506 (3d Cir. 1997) ...........................................5, 19

*Millard v. Developmental Disabilities Inst., Inc.,*
    266 B.R. 42 (E.D.N.Y. 2001) ..................................................6

*Morgan v. Kobrin Sec. Inc.,*
    649 F. Supp. 1023 (N.D. Ill. 1986) .....................................24

*New York Employees Ret. Sys. v. Ebbers,*
    293 B.R. 308 (S.D.N.Y. 2003) ............................................34

*Northwest Airlines Corp. et al. v. Karpiuk et al.,*
    Adv. Pro. No. 06-01219 (Bankr. S.D.N.Y. Apr. 27, 2006) ...................................8

*Reuther v. Smith,*
    No. 06-6612, 2007 WL 1962956 (E.D. La. 2007) .............................7

*Ripely v. Mulroy,*
    80 B.R. 17 (E.D.N.Y. 1987) ……………………………………....................32

*Robbins v. Chase Manhattan Bank, N.A.,*
    No. 93-0063-H, 1994 WL 149597 (W.D. Va. Apr. 4, 1994) ..............................32

*SAS Overseas Consultants v. Benoit,*
    No. 99-1663, 2000 WL 140611 (E.D. La. 2000) ....................................7

*Sinkow v. Latimer,*
    82 B.R. 354 (Bankr. E.D. Pa. 1988) .....................................27

*Stewart v. Thorpe Holding Co. Profit Sharing Plan,*
    207 F.3d 1143 (9th Cir. 2000) ............................................33

*Teachers Ins. & Annuity Ass'n v. Butler,*
    803 F.2d 61 (2d Cir. 1986) ...................................................6

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,*
    309 F.3d 144 (3d Cir. 2002) ................................................28

*Teufel v. Rosenberg,*
    No. 01-2238-JWL, 2002 WL 31527378 (D. Kan. Nov. 8, 2002) .......................15

*Thomson Kernaghan & Co. v. Global Intellicom, Inc.,*
    No. 99-cv-3005, 2000 WL 640653 (S.D.N.Y. May 17, 2000) ...........................10

*Unsecured Creditors' Comm. v. DeLorean (In re Delorean Motor Co.),*
    755 F.2d 1223 (6th Cir. 1985) ...................................................................7

*Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al.,*
    945 F. Supp. 603 (S.D.N.Y. 1996) .........................................................9

## FEDERAL STATUTES

11 U.S.C. §105(a) ...........................................................................................passim

11 U.S.C. §362(a) ...........................................................................................passim

11 U.S.C. §510(b) ...............................................................................................19

11 U.S.C. §502(c)(1) .............................................................................................4

11 U.S.C. §502(e)(1)(B) .......................................................................................14

11 U.S.C. §1201....................................................................................................34

11 U.S.C. §1301....................................................................................................34

## FEDERAL RULES

Fed. R. Bankr. P. 7030(b)(6) ................................................................................4

Fed. R. Civ. P. 65.............................................................................................3, 6

Fed. R. Civ. P. 30(b)(6) ........................................................................................4

## STATE STATUTES

Del. Code Ann. tit. 8, §145................................................................................13

## OTHER AUTHORITIES

H.R.Rep. No. 95-595, at 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97.......7

S. Rep. No. 95-989, at 51 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5837............7

# INTRODUCTION

Defendants are Mark W. Mayer ("Mayer"), Larry C. Welsh ("Welsh") and Brandi Young ("Young") (collectively, the "ERISA Plaintiffs"), on behalf of the Smurfit-Stone Container Corporation Savings Plan, the Jefferson Smurfit Corporation Hourly Savings Plan, the Smurfit-Stone Container Corporation Hourly Savings Plan and the St. Laurent Paperboard Hourly Savings Plan (collectively, the "Plans"). They have filed in the United States District Court for Northern District of Illinois (the "District Court") an Amended Complaint captioned *Mayer, et al., individually and on behalf of all others similarly situated v. Administrative Committee of the Smurfit-Stone Container Corporation Retirement Plans, et al.*, No. 1:09-cv-02984 (VMK) (the "ERISA Litigation"). The ERISA Litigation does not assert any claims against Smurfit-Stone Container Corporation (the "Company" or "SSCC") or any of the other Debtors identified in footnote one of the Memorandum of Law in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (together referred to herein as "Debtors"), or any other related corporate entities. Instead, it names as Defendants only the following (collectively, the "Non-Debtor Defendants"): the Administrative Committee of the Smurfit-Stone Container Corporation Retirement Plans (the "Administrative Committee"), Patrick J. Moore ("Moore"), Paul K. Kaufman ("Kaufman"), Charles Hinrichs ("Hinrichs"), Ron Hackney ("Hackney") and Brian Gardner ("Gardner").

Through their Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), the Debtors seek the extraordinary remedy of enjoining the ERISA Litigation from proceeding against the Non-Debtor Defendants. However, Debtors have

not come close to meeting the heavy burden for the extraordinary relief they seek, and in fact this case is no different from numerous other cases relating to high-profile corporate debtors which have successfully reorganized in Delaware and elsewhere while some of their officers and directors contemporaneously litigated securities and/or ERISA claims.

The indemnification and insurance issues on which Debtors primarily focus exist in virtually every bankruptcy case in which there is contemporaneous litigation pending against non-debtor officers and directors. As many courts have held, however, these concerns do <u>not</u> justify the extraordinary remedy of enjoining that litigation. This is especially so here, where the Debtors grossly overstate the burden of discovery in the ERISA Litigation. In fact, discovery in this relatively uncomplicated case will not distract or preoccupy the Debtors' executives to any material degree, and will, as is generally the case, consist largely — especially in the early phases of the litigation — of document and written discovery that the Debtors' counsel will primarily be handling. It is no surprise that the Debtors would exaggerate the burdens of discovery in the ERISA Litigation, for the Debtors are controlled by the Non-Debtor Defendants, who have a significant conflict of interest due to a substantial personal incentive to use the Debtors' bankruptcy to delay claims against them personally, at the expense of the Debtors' employees and retirees who will benefit directly from the ERISA Litigation.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an adversary proceeding by which Debtors seek to enjoin the ERISA Litigation through the filing of their Motion. The motion to enjoin is pending. Defendants have answered the Verified Complaint.

## SUMMARY OF ARGUMENT

1. To enjoin litigation against non-debtors pursuant to §105 of the Bankruptcy Code, Debtors must establish that they have met both the "unusual circumstances" test and the requirements of Fed. R. Civ. P. 65. They have failed to meet both burdens here.

2. As a general matter, courts do not shield non-debtor corporate officers from liability for their independent violations of law, such as the ERISA violations at issue here.

3. Under black letter law, the Debtors' contingent indemnification obligations to the non-debtor officers is not grounds for an injunction.

4. Under black letter law, the existence of limited insurance coverage is not grounds for an injunction.

5. Prosecution of the ERISA Litigation will not impede Debtors' reorganization efforts, as the burden of discovery on the Debtors is minimal relative to cases in which an injunction is granted.

6. Debtors have not demonstrated a substantial likelihood of imminent irreparable harm, the balance of hardships weighs against issuance of the injunction, and the public interest would be dis-served if the ERISA Litigation were to be enjoined.

## STATEMENT OF FACTS

Defendants filed an Amended Complaint in the ERISA Litigation on July 16,

2009, a copy of which is attached hereto as Exhibit A. The Amended Complaint names the Non-Debtor Defendants as the only defendants in the ERISA Litigation. The Amended Complaint does not name Debtors as defendants and does not contain any "John Doe" designations.

The District Court in the ERISA Litigation has set a schedule permitting just 5 months for discovery. On September 22, 2009, Defendants served 19 narrowly tailored document requests in the ERISA Litigation on the Non-Debtor Defendants. Via subpoenas served on September 25, 2009, Defendants served those same 19 requests upon SSCC and Smurfit-Stone Container Enterprises, Inc. ("SSCE").

On October 9, 2009, Defendants deposed the Debtors pursuant to Fed. R. Bankr. P. 7030(b)(6) and Fed. R. Civ. P. 30(b)(6). Debtors' designee for the deposition was Craig Hunt, the Debtors' General Counsel on whose Declaration Debtors' Motion relies. A copy of the deposition transcript is attached hereto as Exhibit B.[1]

Debtors testified that Hunt's declaration was drafted entirely by counsel, that he made no changes to it whatsoever, and that he did not even send a copy of it to the Non-Debtor Defendants whom it discussed. *See* Tr. at 7:17-8:7.

Debtors testified that documents responsive to Defendants' requests are located in just five locations: (i) a Benefits Group within SSCC's and SSCE's Human Resources Department maintains all of the documents concerning administration of the Plans responsive to Defendants' document requests 1, 2, 3, 8, and 13 (*id.* at 10:11-12:2, 12:11-12:18, 23:4-23:18, 28:11, 30:5-30:14); (ii) Assistant Treasurer

---

[1] As used herein, "Tr." refers to the Fed. R. Bankr. P. 7030(b)(6)/Fed. R. Civ. P. 30(b)(6) deposition of Debtors through their General Counsel, Craig A. Hunt, taken on October 9, 2009. All citations to the transcript will appear in the form __:__, with the blank preceding the colon representing a page and the blank following the colon representing a line on that page.

Gardner, who is effectively the secretary of the Administrative Committee (*id.* at 20:19-20:23, 21:12-21:22) keeps all documents concerning Plan investments responsive to document requests 5, 6, 7, and 10 (*id.* at 15:24-16:21, 20:20-21:11, 22:11-22:24, 25:14-26:7); (iii) Hunt maintains the single page responsive to document requests 4 and 12 (*id.* at 12:22-12:23, 14:7-15:16); (iv) the sixteen Operating Committee members received identical copies of foot-think monthly reports and analyses of the Company's financial performance, responsive to document requests 15 and 16 (*id.* at 35:16-36:21, 37:17-38:18); and (v) persons who sent or received documents prepared or reviewed specifically by the Non-Debtor Defendants (*id.* at 39:8-39:9, 40:20-40:22) presumably maintain those documents.[2] Debtors did not quantify in any meaningful way the volume of responsive documents; in many instances, they admitted that the volume of documents responsive to a given request was quite minimal (*id.* at 15:9-15:12) or that they had no idea as to the volume (*id.* at 11:9, 12:10, 12:21, 17:5-17:6, 18:10-18:11, 20:19, 26:9).

## ARGUMENT

### I. THE HIGH BURDEN FACING ONE WHO SEEKS A PRELIMINARY INJUNCTION

As Debtors concede (*see* Memo at 16,[3] citing *McCartney v. Integra Nat'l Bank,*

---

[2]  With respect to other documents, Hunt testified that he was wholly unfamiliar with analyses of the Company Stock Fund or its investments, documents concerning ERISA §404(c), or minutes or transcripts of meetings between Company employees and securities analysts or credit rating agencies, responsive to document requests 9, 11, and 18.  *Id.* at 24:1-24:5, 27:19-28:1, 41:21-41:24.  He did not testify about documents evidencing the Non-Debtor Defendants' affirmative defenses in the ERISA Litigation, responsive to document request 14.  *Id.* at 33:1-33:3.  He testified that he did not know who kept third party analyses of the Company's business or financial condition, responsive to document request 19.  *Id.* at 42:18-44:15.

[3]  Debtors' Memorandum of Law in Support of their Motion is referred to herein as the "Memo."

*North*, 106 F.3d 506, 509 (3d Cir. 1997)), "[i]t is a tenet of bankruptcy law that the automatic stay provisions of §362 of the Bankruptcy Code apply <u>only to debtors</u> and do not prevent litigation from proceeding against non-debtors." *In re Desa Holdings Corp.*, 353 B.R. 419 (Bankr. D. Del. 2006) (emphasis added).[4] Thus, enjoining an action against non-debtor defendants is "the exception rather than the rule and [is] not favored absent some unusual circumstance." *Millard v. Developmental Disabilities Inst., Inc.*, 266 B.R. 42, 45 (E.D.N.Y. 2001).

The emerging trend within the Third Circuit is that courts will not issue a preliminary injunction enjoining an action against third parties – the precise relief that Debtors seek from this Court – unless the movant establishes <u>both</u> "unusual circumstances" <u>and</u> the traditional four factors for issuing a preliminary injunction under Fed. R. Civ. P. 65.

> In evaluating the issuance of the preliminary injunction extending the protection of section 362(a) to Non-Debtor third parties, the Court will undertake a three-step analysis. The court will determine, first, whether the Bankruptcy Court had jurisdiction to issue the injunction. Second, whether the Bankruptcy Court properly extended the section 362(a) stay to the non-debtors. Finally, whether the Bankruptcy Court properly exercised its discretion in issuing an injunction, pursuant to section 105(a), enjoining suit against Non-Debtors.
>
> * * *
>
> Although the facts necessary to support the Court's determination at each step of the analysis may overlap, each step of the inquiry is distinct, independently necessary, and implicates different interests. Mere

---

[4] *See also Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to §362(a) are limited to debtors and do not encompass non-bankrupt codefendants."), *quoted in Kadesh v. United Airlines, Inc.*, No. 02-cv-9058, 2003 WL 435632 at *1 (S.D.N.Y. Feb. 24, 2003).

> incantation to the power of the Court to issue injunctions under section 105(a) is insufficient. … [U]nless the Debtors can satisfy all three steps of the inquiry, an injuction should not issue.

*In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 611 (E.D. Pa. 2009) (noting that courts have "often conflated the analysis" which "has led to confusion"). *See also In re W.R. Grace & Co.*, 386 B.R. 17, 32 (D. Del. 2008) (in deciding motion to expand a preliminary injunction to encompass actions against third parties, applying both the "unusual circumstances" standard and the traditional four factors for a preliminary injunction), *quoting In re: Excel Innovations, Inc.*, 502 F.3d 1086, 1096 (9th Cir. 2007) (where debtor seeks to expand preliminary injunction  to stay a proceeding against non-debtors, court must apply the usual preliminary injunction standard). This approach follows the majority of other Circuits,[5] as well as the intent expressed in the legislative history behind §105(a) of the Bankruptcy Code.[6]

The result of these stringent standards is that courts routinely hold that the automatic bankruptcy stay does not apply to actions against non-debtors. *See, e.g.,*

---

[5]  Indeed, as explained by the *Excel Innovations* court, "[t]he majority of circuits that have reviewed injunctions staying actions against non-debtors have applied the usual preliminary injunction standard [of Fed. R. Civ. P. 65]." *Id.* at 1094, *citing, inter alia, Am. Imaging Servs. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 858 (6th Cir. 1992) *and A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) *and Commonwealth Oil Ref. Co. v. EPA (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1188-1189 (5th Cir. 1986), *cert. denied*, 483 U.S. 1005 (1987), *and Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 68-69 (2d Cir. 1986). *See also Reuther v. Smith*, No. 06-6612, 2007 WL 1962956 (E.D. La. 2007) at *4 *citing, inter alia, In re Zale Corp.*, 62 F.3d 746, 765 (5th Cir. 1995); *In re Sudbury, Inc.*, 140 B.R. 461, 463 (N.D. Ohio 1992), *citing Unsecured Creditors' Comm. v. DeLorean (In re Delorean Motor Co.)*, 755 F.2d 1223 (6th Cir. 1985); *In re Babcock & Wilcox Co.*, No. 00-3408, 2001 WL 536305 (E.D. La. 2001) at *6; *SAS Overseas Consultants v. Benoit*, No. 99-1663, 2000 WL 140611 (E.D. La. 2000) at *2.

[6]  "Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions."  S. Rep. No. 95-989, at 51 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5837 *and* H.R.Rep. No. 95-595, at 342 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97, *quoted in Excel Innovations*, 502 F.3d at 1094 *and Commonwealth Oil*, 805 F.2d at 1188-1189.

*Brown v. Jevic*, 2009 WL 2342731 (3d Cir. July 31, 2009) at *1, *4 (noting holdings by other courts of appeals that the §362 "automatic stay does not apply generally to non-debtor parties" and holding that a defendant is not precluded from removing a class action to federal court because a co-defendant is in bankruptcy).[7] For the following reasons, the same conclusion should be reached by the Court here.

## II. COURTS DO NOT SHIELD NON-DEBTOR CORPORATE OFFICERS FROM LIABILITY FOR THEIR INDEPENDENT VIOLATIONS OF ERISA

Securities or ERISA claims of a debtor's shareholders against non-bankrupt officers and directors are not estate property. *See In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 561 (D. Del. 1999) (discussing the holding in *In re Phar-Mor Securities Litig.*, 164 B.R. 903 (W.D. Pa. 1994) and holding that securities fraud claims are not part of the bankruptcy estate and therefore not subject to the §362 stay). Thus, courts regularly refuse to enjoin litigation against independently-liable non-debtor officers and principals. *See, e.g., In re Uni-Marts, LLC*, 405 B.R. 113, 127-128 (D. Del. 2009) (refusing to enjoin litigation against debtor's president); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("[S]ection 362 does not bar an action against the principal of a debtor-corporation.").[8]

---

[7]   *See also Teachers Ins.*, 803 F.2d at 67; *In re First Central Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (collecting cases); *In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y. 1997); *Ripely v. Mulroy,* 80 B.R. 17, 19 (E.D.N.Y. 1987); *Northwest Airlines Corp. et al. v. Karpiuk et al.*, Adv. Pro. No. 06-01219 (Bankr. S.D.N.Y. Apr. 27, 2006) (Gropper, J.) (denying request for injunction pursuant to §362(a) and §105(a) to stay securities and ERISA class actions pending against non-debtor officers and directors of debtor corporation); *In re Wedgeworth v. Fibreboard*, 706 F.2d 541, 542 (5th Cir. 1983) ("protections of §362 neither apply to co-defendants nor preclude severance"); *Credit Alliance Corp. v. Williams,* 851 F.2d 119 (4th Cir. 1988) (§362 stays proceedings against the debtor only); *Crumpler v. Wetsel Seed Co. (In Re Southside Lawn & Garden / Suffolk Yard Guard),* 115 B.R. 79, 81 (Bankr. E.D. Va. 1990)(refusing to enjoin action against general partners of the Chapter 11 debtor who were entitled to indemnification by the debtor).

[8] *See also First Central Fin. Corp.*, 238 B.R. at 18 ("Lawsuits instituted against officers and directors of a

Where, as here, a party has an independent claim against the Non-Debtor

Defendants for their violations of ERISA law, the bankruptcy stay in particular should not

be employed to shield them from liability. Instead,

> Even when an action is pending as of the petition date
> against a corporate debtor which is a codefendant with its
> officers and directors, the lawsuit is typically stayed only as
> to the debtor. … Basically, "where a non-debtor
> codefendant may be held independently liable of the debtor,
> then there is no compelling basis by which a court must
> extend the automatic stay provisions of §362 to the non-
> debtor codefendants."

*First Central Fin.,* 238 B.R. at 18, *citing Wedgeworth,* 706 F.2d at 544 (debtor may be

severed from an action, which can then continue against other defendants) *and quoting*

*Duval v. Gleason*, No. C-90-0242, 1990 WL 261364 at *4 (N.D. Cal. Oct. 19, 1990)

(after severing debtor, permitting securities class action to proceed against non-debtor

defendants). *See also In re KMart Corp.*, 285 B.R. 679, (Bankr. N.D. Ill. 2002) ("it is

important to note that joint tortfeasors who are independently liable for third-party claims

are not covered by the automatic stay"). As the *Duval* court explained:

> Unlike a products liability action in which a suit against an
> officer is effectively one against the corporation itself, the
> present securities action seeks to attach liability for the
> specific fraudulent acts of named individuals. Thus the

---

corporate debtor are usually not stayed."); *Gray*, 230 B.R. at 242 (stating, "courts in this circuit regularly refuse to extend a debtor corporation's §362 stay to its non-debtor officers and principals" and refusing §362 stay for non-debtor chairman who "owned or controlled" the debtor as officer and principal), *citing Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al.*, 945 F. Supp. 603 (S.D.N.Y. 1996) (non-debtor principal who, under state law, was debtor corporation's "alter ego") *and E.I. DuPont De Nemours & Co. v. Fine Arts Reprod. Co., et al.*, No. 93 Civ. 2462 (KMW), 1995 WL 312505, *5 (S.D.N.Y. May 22, 1995) (non-debtor who was debtor corporation's president and guarantor) *and Levesque v. Kelly Cmmc'n, Inc., et al.*, 164 B.R. 29, 30 (S.D.N.Y. 1994) (non-debtor whose two debtor corporations bore his name) *and CAE Indus. Ltd. v. Aerospace Holdings Co.*,116 B.R. 31, 32 (S.D.N.Y. 1990) (non-debtor former Chairman, CEO, and Director of debtor corporation) *and In re Crazy Eddie Sec. Litigation*, 104 B.R. 582, 584 (E.D.N.Y. 1989) (all non-debtor co-defendants affiliated with debtor corporation) *and Ripley v. Mulroy, et al.*, 80 B.R. 17, 18 (E.D.N.Y. 1987) (non-debtor "president, sole common-stock shareholder, and controlling person" of debtor corporation).

securities laws allow for the independent liability of the officers or other parties involved, and proceedings like the present may go forward without the participation of the corporation. ***To hold otherwise would allow the Bankruptcy Act to create a sizeable loophole through which malfeasant corporate officers and directors and their insurers could escape, at least temporarily, all civil prosecutions of their individual*** fraudulent ***acts by having the corporation file a bankruptcy petition***. We cannot agree that the protections afforded by the Bankruptcy Act were intended to be so all-encompassing so as to shield such non-debtor third parties.

*Id.* (emphasis added).

Indeed, many courts have expressly adopted a limitation on the "unusual situation" exception: "in situations where a codefendant is independently liable, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of a duty, then the protection afforded a debtor under the automatic stay ***would clearly not extend*** to such a nondebtor." *Thomson Kernaghan & Co. v. Global Intellicom, Inc.*, No. 99-cv-3005, 2000 WL 640653 (S.D.N.Y. May 17, 2000) (emphasis added), *quoting In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983) *and citing CAE Indus.,* 116 B.R. at 32 *and Matter of Johns-Manville Corp.*, 26 B.R. 405, 411 (Bankr. S.D.N.Y. 1983) *and* "numerous other courts."[9]

In the ERISA context specifically, courts have held that "a stay of claims against the [debtor] employer does not stay claims against the employee benefit plan." *Buchanan v. Golden Casting Corp. Hourly Health Benefit Plan*, No. 4:03-cv-151-SEB-WGH, 2003

---

[9] *See also Phar-Mor,* 166 B.R. at 62 ("the Code was not intended to stay actions which assert that a non-debtor is independently liable as, for example, ...where the non-debtor's liability rests upon his own breach of duty") (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *In re Asbestos School Litig.*, 1991 WL 84038 (E.D. Pa. May 10, 1991) at *2 (same); *Chesapeake Crossing Associates v. TJX Companies, Inc.,* 1992 WL 469801, *4 (E.D. Va. 1992) (same); *Holland v. High Power Energy,* 248 B.R. 53, 58 (S.D.W. Va. 2000) (automatic stay under §362(a) is inapplicable when a third party has "obligations that are 'independent' and primary, not derivative of those of the debtor.").

WL 22951936 (S.D. Ind. Oct. 10, 2003) at *3 (denying motion to stay ERISA claims), *citing Brengettys v. LTV Steel Hourly Pension Plan*, 241 F.3d 609, 609 n.1 (7th Cir. 2001) (after filing for bankruptcy, employer was dismissed but ERISA class action suit against benefit plans continued). Moreover, "[s]imilar to employee benefit plans, federal courts have found that individual plan fiduciaries are not protected from prosecution by a §362 automatic stay of suits against the employer." *Buchanan*, 2003 WL 22951936 at *4, *citing Leahy v. Trans Jones, Inc.*, 996 F.2d 136 (6th Cir. 1993) (after employer filed Chapter 11, granting employer's request for a §362 stay, but permitting ERISA lawsuit to continue against the stock plan individual fiduciaries) *and Ches v. Archer*, 827 F. Supp. 159 (W.D.N.Y. 1993). Based on this pervasive authority, the Non-Debtor Defendants, who are alleged to have independently violated ERISA law and to be liable independent of any conduct by or claims against the Debtors, should not be allowed to collaterally shield themselves from liability at the expense of the Debtors' employees and retirees.[10]

## III. THE COURT SHOULD NOT PRELIMINARILY ENJOIN THE ERISA LITIGATION BECAUSE DEBTORS HAVE NOT DEMONSTRATED THAT THE "UNUSUAL CIRCUMSTANCES" TEST HAS BEEN MET

Unusual circumstances "only 'arise[] when there is such identity between the debtor and [non-debtor] that the debtor may be said to be the real party defendant and that a judgment against the [non-debtor] will in effect be a judgment…against the

---

[10] It is worth noting that <u>none</u> of the cases cited by Debtors involve underlying ERISA claims. Moreover, only two of Debtors' cases cited involved securities fraud class actions, but even those are readily distinguished. In *In re Rickel Home Centers, Inc.*, the court issued only a limited stay, permitting the parties to litigate the motion to dismiss and to engage in certain discovery. 199 B.R. 498 (D. Del. 1996). As discussed *supra*, in *Continental Airlines*, 177 B.R. 475, 478-482 (D. Del. 1993), the debtor was the true defendant because the litigation centered on its denials that it would file Chapter 11, and the record evidence showed that the litigation would deplete estate assets *inter alia* because the debtor had no insurance to cover its indemnification obligations.

debtor." *Gray v. Hirsch*, 230 B.R. 239, 242 (S.D.N.Y. 1999) *quoting A.H. Robins*, 788 F.2d at 999.

### A.     Debtors Are Not The Real Parties In Interest

Debtors erroneously argue that they are the real parties in interest in the ERISA litigation because the Non-Debtor Defendants are indemnified by Debtors and because the Debtors have limited insurance coverage. Memo at 18-24. These arguments are wrong.[11]

### 1.     Indemnification Does Not Justify An Injunction

As Debtors concede, the ERISA defendants are not necessarily indemnified. The Debtors' purported indemnification obligations are ***not absolute*** because they hinge upon a finding that the Non-Debtor Defendants acted in good faith. *See* Memo at 10-11 (quoting Plan provisions and bylaws). Thus, Debtors' purported indemnity "obligations" are nothing more than contingent claims. "A claim is contingent where it 'has not yet accrued and…is dependent upon some future event that may never happen.'" *In re Touch Am. Holdings, Inc.*, No. 03-11915-KJC, 2009 WL 2341835 (Bankr. D. Del. 2009) at *2, *quoting In re RNI Down Corp.*, 369 B.R. 174, 181 (Bankr. D. Del. 2007) *and In re GCO Svcs., LLC*, 324 B.R. 459, 466 (Bankr. S.D.N.Y. 2005). As the court stated in *Touch Am.*,

> An indemnification claim is often considered to be contingent until the underlying litigation is resolved because: "[t]he right is typically subject to a requirement that the indemnitee [has] acted in good faith and in a manner that he reasonably believed was in the best interest of the company. As a result, an indemnification dispute

---

[11] In the ERISA context specifically, "[e]mployee benefit plans do not fall under the protection of a §362 automatic stay [applying to the debtor employer] because 'an employer has no property interest in its employee benefit plans.'" *Buchanan*, 2003 WL 22951936 at *3, *quoting Divane v. A & C Elec. Co., Inc.*, 193 B.R. 856, 860 (N.D. Ill. 1996).

generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit.

2009 WL 2341835 at *2, *quoting RNI Wind Down,* 369 B.R. at 185-186 *and Majkowski v. Am. Imaging Mgmt. Svcs.*, 913 A.2d 572, 586 (Del. Ch. 2006).

Thus, even if indemnification is appropriate, it is limited in that although the Non-Debtor Defendants may receive advances from insurance to cover expenses they incur defending the ERISA Litigation, they may be forced to disgorge or repay such advances in the event they are found to have acted in bad faith. *See* Del. Code Ann. tit. 8, §145 (indemnification limited to instances in which actions were in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the corporation); *May v. Bigmar,* 838 A.2d 285, 288-89 (Del. Ch. 2003) ("[t]his right of indemnification is not a 'blank check for corporate officials' and the court must determine the extent of indemnification in light of the results of the litigation"), *aff'd* 854 A.2d 1158 (Del. Supr. July 16, 2004).

In *In re Reliance Acceptance Group, Inc.*, 235 B.R. 548 (D. Del. 1999), the District Court reversed a Bankruptcy Court order preliminarily enjoining securities class actions against a debtors' officers and directors, rejecting arguments that such relief was appropriate because, *inter alia*, the officers and directors had indemnification claims. The court stated, in relevant part:

> **The Debtors are probably correct that allowing the Shareholders' Litigation to proceed will increase the magnitude of directors and officers' indemnification claims against the Estate. However, that does not appear to be a basis for permanently enjoining the Shareholders' Litigation.**

*Id.* at 557 (emphasis added). Since, for purposes of weighing the merit of a request to

enjoin litigation against non-debtors, there is no material difference between a securities case and an ERISA case, *Reliance* should govern here. *See also In re Uni-Marts*, 405 B.R. at 127-128 (even though debtor's charter required indemnification, and "hypothetically, the plaintiff's suit [concerning fraud and misrepresentation claims]…could result in losses to the estate," court refused to stay suit against debtors' president).

Another court reached a similar result when a corporate debtor tried to use the automatic stay to undo a default judgment obtained against its officers in an employment-related lawsuit, stating:

> This is not a case of special circumstances. Although there is a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification pursuant to debtor's by-laws, the magnitude of the harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in *Robins* and *Johns-Manville*. I believe the court in those cases was particularly sensitive to the magnitude of the problems and the need to maintain the status quo and control over all the litigations which had the potential to destroy any reorganization plans. Such a threat is not evident here. Debtor seeks to unravel a default judgment against two of its officers. The balancing of harm in this proceeding is between the officers and [the non-movant], not debtor. With his default judgment against [officers], [the non-movant] will likely be paid the full amount of his claim. They, in turn, can seek indemnification from debtor, but their claim will be treated like any pre-petition, unsecured claim. In all likelihood, they will not get paid in full. See §502(e).

*In re All Seasons Resorts, Inc.,* 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) (The court also stated: "The indemnification provision in debtor's corporate by-laws permits officers…of debtor to seek reimbursement for the payment of claims and expenses arising out of the performance of their duties on behalf of debtor. This is a right which

these agents have. It is not a property interest of debtor.") Thus, the mere possibility that the Debtors may at some point be required to indemnify their officers and directors (the Non-Debtor Defendants) does not constitute "unusual circumstances" such as to warrant enjoining the ERISA litigation.[12] *See, e.g., In re First Alliance Mortg. Corp.,* 264 B.R. 634, 660 (C.D. Cal. 2001) (reversing §105 injunction where, *inter alia,* "[a]t this point whether the individuals would be able to seek ... indemnification ... is at best an open question"). *See also, e.g., In re Codfish Corp.,* 97 B.R. 132, 135 (Bankr. D.P.R. 1988) ("The practice of indemnifying corporate officers and directors is common…and is not by itself sufficient to warrant that automatic stay provisions of 11 U.S.C. §362(a) be extended under 11 U.S.C. §105(a) to officers…"); *Teufel v. Rosenberg,* No. 01-2238-JWL, 2002 WL 31527378 (D. Kan. Nov. 8, 2002) at * 2 ("Although defendants may have a right to be indemnified for any judgment they are required to pay in this case, those rights do not provide a legal basis under the Bankruptcy Code for this court to stay the action.").[13]

---

[12] The Non-Debtor Defendants' contingent indemnification rights are simply contingent or unliquidated claims like any other claims against the estate that will have to be estimated under 11 U.S.C. § 502(c)(1) or expunged under 11 U.S.C. § 502(e)(1)(B), and, in any event, may be subject to subordination under 11 U.S.C. § 510(b). Whether these indemnification claims are ultimately expunged or subordinated, in either event, there will be no economic impact on the estate and thus, these claims do not give rise to "unusual circumstances" and there is no basis for an injunction. *See, e.g., Reliance,* 235 B.R. at 557; *In re Uni-Marts,* 405 B.R. at 127-128.

[13] The cases Debtors cite (*see* Memo at 18-22) are distinguishable and/or do not support Debtors' argument that they are the real party in interest in the ERISA Litigation due to their indemnification obligations. In *W.R. Grace,* 2004 WL 954772 (Bankr. D. Del. Apr. 29, 2400), a case in which the backdrop was an increasing deluge of asbestos-related personal injury actions, debtors had assumed the defense of the underlying litigation, had an undisputed obligation to indemnify the defendant for claims exceeding $25,000, and the court's decision made no mention as to the availability of insurance coverage. The ERISA Litigation is a *de minimus* potential indemnification exposure by comparison. *In re Am. Film Techs.* 175 B.R. at 849-850 (D. Del. 1994), involved an underlying breach of contract/wrongful discharge action against the debtor and its current and former directors; if that action proceeded, the debtor was exposed to potential vicarious respondeat superior liability and faced collateral estoppel issues – concerns not raised by Debtors with regards to the ERISA Litigation. *McCartney,* 106 F.3d at 510-511 (3d Cir. 1997), is a factually inapposite Chapter 7 case, in which the court addressed whether the automatic stay precluded a debtor from being named in a state court deficiency judgment action against a corporation he

## 2.      Insurance Does Not Justify An Injunction

Debtors also erroneously argue that the fiduciary insurance coverage which may apply to the ERISA Litigation claims provides some basis to enjoin the ERISA Litigation. *See* Memo at 21-24. Courts that have considered this issue have analyzed whether the proceeds of such policies are estate property and have focused not on who owns the policies or paid their premiums—typically the debtor or some related entity-- but rather on who has the right to receive the policy proceeds. Courts have concluded that insurance policies providing liability coverage for a corporate debtors' officers and directors and for the obligation of the corporation to indemnify those officers and directors are <u>not</u> part of the debtor estate.[14] This is true even where a D&O policy provides "entity" coverage to the corporation – neither the policy nor the proceeds are converted into property of the estate. *See, e.g., Reliance*, 235 B.R. at 561 (concluding that debtors

---

owned. In *In re Family Health Servs.*, the court enjoined actions by non-contract healthcare providers to bypass the debtor HMOs and seek payment of medical bills directly from the individual HMO members; the court found, *inter alia*, that such efforts would not only trigger reimbursement/indemnification obligations by the debtors, they also put at risk the debtors' goodwill and membership contracts, which were "so essential to the survival of the debtor that they constitute property of the estate" that was at risk. 105 B.R. 942-943 (Bankr. C.D. Cal. Sept. 22, 1999). Debtors here have raised no analogous concerns regarding the ERISA Litigation.

[14] *See, e.g., In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1398-1399 (5th Cir. 1987) (holding D&O policies were not property of debtor estate where they provided a single total amount of coverage for: (i) any indemnification of directors or officers required of the company by statute, corporate charter or by-law, and (ii) liability coverage for the individual directors and officers in respect to liability and related legal expenses arising out of their corporate positions which they personally might incur or have asserted against them). *See also In re Zenith Lab. Inc.*, 104 B.R. 659, 665 (D.N.J. 1989) (holding policy providing both D&O liability coverage and indemnification coverage for company was not property of the estate, because "[a]n insurance policy purchased by the debtor is only an asset to the extent that it increases the debtor's worth or diminishes its liabilities."); *Duval*, 1990 WL 261364 at *5 (court "not persuaded that the insurance policy proceeds ... necessarily constitute 'property' of the debtor policy-owner…such that the present proceedings [against non-debtor co-defendants] must be stayed"); *In re: Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991) (holding that proceeds of D&O policies were not assets of the estate because the directors and officers were the primary beneficiaries of the policies); *In the Matter of Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993). ("The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid the claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.").

"have been unable to identify a legal principle that stands for the proposition that the Estate's claims for relief should take precedence over the Shareholders' [non-derivative] claims").[15]

The *Reliance* court's reasoning is once again instructive:

> If the Shareholders are successful and obtain a judgment or judgments, [insurance] coverage may be relevant as a practical matter, as certain of the defendants may not have the ability to pay any judgment. The defendants may have claims against the Company and the insurers for indemnification. It is at that time and in that context, an action among the Debtors, the officers and directors and the insurers, that the issue of the nature and extent of coverage would be resolved.
>
> ***The nature and amount of coverage may be relevant to other issues related to the Shareholders' Litigation, including payment of defense costs and possible settlements. But those are matters that can be resolved between the insurers and insured, without enjoining the Shareholders from proceeding with their claims.***

*Id.* at 557 (emphasis added) (holding that the bankruptcy court erred in finding that allowing the Shareholders' Litigation to proceed will impermissibly diminish or drain the pool of insurance and in granting injunctive relief).[16]

---

[15] *See also First Central Fin.,* 238 B.R. at 17-18 (holding policies providing entity coverage for debtor and liability coverage for its officers and directors were not part of the bankruptcy estate and stating, "If entity coverage is hypothetical and fails to provide some palpable benefit to the estate, it cannot be used by a [debtor] to lever [itself] into a position of first entitlement to policy proceeds."), *citing, inter alia, Phar-Mor,* 164 B.R. at 905 (stating that there is "no legal authority which would elevate the claims and the right to redress of the Debtor over the separate and distinct [non-derivative claims of the shareholder] Plaintiffs") *and In re CHS Electronics, Inc.,* 261 B.R. 538 (Bankr. S.D. Fla. 2001) (policies providing entity coverage for the debtor and liability coverage for its officers and directors were not part of the bankruptcy estate).

[16] *See also In re Granite Partners, L.P.,* 194 B.R. 318, 337-338 (Bankr. S.D.N.Y. 1996) (refusing to enjoin class action against third parties under §362(a) or §105(a) due to alleged impacts on insurance policies providing both indemnification and liability coverage because otherwise "[d]irectors and officers contemplating a corporate bankruptcy could insulate themselves from most post-bankruptcy lawsuits -- if they had not already done so -- simply by purchasing the precise type of insurance designed to protect them in the event of such a lawsuit. This is not the kind of 'insurance' the policy is designed to afford."); *In re Leslie Fay Companies, Inc.,* 207 B.R. 764, 786 (Bankr. S.D.N.Y. 1997) ("Here, as in *Granite,* the [parties seeking the §105(a) injunction] offer only conclusory and unsupported allegations of prejudice. [They] have not demonstrated that it would be unfair or inequitable to permit the settling defendants to rely on the insurance coverage to indemnify them when such an indemnification was expressly contemplated by [the

To similar effect is *In re Quintus Corporation*:

> [11 U.S.C. §] 362(a)(3)…is not applicable to proceeds of the insurance even where the debtor estate may have [a claim against the directors and officers] in addition to the typical [entity coverage claim] because the action of the securities plaintiffs is not an act to obtain possession of property of the estate. The property that the estate has is not the proceeds of the insurance policy. The only property of the estate is a possible claim against the insurance policy similar to the claims which the D&O[s] and the plaintiff's security class may have. And the action of the plaintiffs in pursuing their claims is not taking any action to obtain possession of that property of the estate. It does not affect one bit the claim that the estate may have. … All the estate has is a claim, and somebody else pursuing their claim does not affect or is not an act to obtain possession of the estate property.

*In re Quintus Corporation,* Case No. 01-501 (Bankr. D. Del., April 10, 2002) (Walrath, J.) (Transcript, at 45, lines 6-22) (attached as Exhibit C).

Here, upon a finding of liability or a settlement of the ERISA Litigation, the insurance proceeds will flow directly to the Plans and/or to the Non-Debtor Defendants themselves for legal fees, thereby protecting the Debtors from indemnification claims by the Non-Debtor Defendants (which claims will, in any event, likely be subordinated). As such, the policy proceeds are not part of the Debtors' estates. Moreover, Debtors' unsubstantiated conjecture (*see* Memo at 15-16, 23) that the ERISA Litigation might diminish available insurance funds "in the event of other eligible claims" "leaving them bare against further possible exposure" rings hollow, as the Debtors have provided no competent evidence whatsoever that any such claim has been or is likely to

---

company's] by-laws."); *In re Wolf Fin. Group, Inc.*, No. 94-B-44009, 1994 WL 913278 at *4 (Bankr. S.D.N.Y. Dec. 15, 1994) (refusing to enjoin proceeding where, *inter alia*, "Although debtors by statute and contract may be obliged to indemnify certain of their directors and employees, they have failed to show that any of those persons has an unconditional right to indemnification.").

be filed. Once again, the cases cited by Debtors (*see* Memo at 23-25) are distinguishable and/or do not support Debtors' argument that they are the real parties in interest in the ERISA Litigation due to indemnification obligations and insurance limits.[17]

**B.      Prosecution Of The ERISA Litigation Will Not Impede Debtors' Reorganization Efforts**

The Debtors argue (*see* Memo at 25-29) that the "unusual circumstances" test is satisfied because key personnel, including the Non-Debtor Defendants, will have to divert some undefined amount of attention from their "all consuming" efforts to reorganize the Debtors. However, courts enjoin suits against non-debtor corporate management only in the unusual circumstance where the "[§362] stay protection is **essential** to the debtor's efforts of reorganization." *McCartney*, 105 F.3d at 510 (emphasis added). Mere speculation as to the impact of a case is insufficient to establish that an injunction should issue. *See, e.g., Phar-Mor*, 166 B.R. at 62-63 (contention that continuation of a securities litigation could delay debtors' reorganization and plan confirmation, while it "may ultimately be true," "is at present mere speculation and does not constitute the type of proof required…[f]or an injunction").

The essence of Debtors' argument is that the Non-Debtor Defendants are too

---

[17]  In *In re SN Liquidation*, 388 B.R. at 583-586 (D. Del. 2008), the debtors had sold all their assets and were no longer operating, the non-debtor defendants had already asserted indemnification claims, there were already multiple class action lawsuits pending against the debtors and the non-debtor defendants, and available insurance policies expressly limited their scope of coverage (*e.g.*, excluding coverage for insureds who are indemnified by the debtor or excluding non-securities claims). Here, the Debtors have not sold all their assets, and there is no evidence that the Non-Debtor Defendants have asserted any indemnification claims concerning the ERISA Litigation or that the applicable fiduciary insurance policies contain any relevant coverage exclusions. In *Continental Airlines*, 177 B.R. 475, 478-482 (D. Del. 1993), unlike in the ERISA Litigation, the debtor was the true defendant because the allegations centered on its own denials that it was filing Chapter 11, and there was record evidence that the actions would deplete the estate assets *inter alia* because it had no insurance to cover its indemnification obligations. In *Uni-Marts*, 399 B.R. 400 (Bankr. D. Del. 2009), the court actually refused to enjoin or stay an action against a non-debtor, so this case actually undermines Debtors' position here.

busy running the Debtors' business to spend any time at all defending the ERISA Litigation. This is simply not so. Initially, all the Debtors are really saying here is that their senior executives are working hard. But that cannot be enough to obtain a stay because senior executives always claim they are working hard. If working hard for the Debtors was all that was required for an injunction, then an injunction would be issued in every case, rather than only in extraordinary circumstances.

And in any event, the Debtors' assertion is unsubstantiated. Here, the only evidence of this burden is a Declaration containing nothing but the most commonplace of generalities from the Debtors' General Counsel. *In re University Medical Ctr.*, 82 B.R. 754 (Bankr. E.D. Pa. 1988) (denying §105(a) injunction where, *inter alia*, individual defendants described their bankruptcy duties "largely in generalities"). Obviously, the Non-Debtor Defendants have presented no evidence at all in support of their position. The Court should view the Declaration with skepticism at best, as the Non-Debtor Defendants have every incentive to cause the Debtors that they control to help them avoid their personal responsibilities to the Plans.

Debtors also fail to explain why Sidley Austin, a multi-national law firm with 1,700 lawyers, cannot alleviate any of the "burden" that supposedly will be imposed on the Debtors if the ERISA Litigation proceeds against the Non-Debtor Defendants, or why Non-Debtor Defendants' counsel, Winston & Strawn, another multi-national law firm, with over 900 lawyers, will not largely oversee the ERISA Litigation. In other words, the "burden" of consummating the reorganization will,

as a practical matter, fall in large measure on Sidley, while the "burden" of defending the ERISA Litigation will fall mainly on Winston. For example, in this case, General Counsel Hunt, on whose Declaration Debtors rely, testified that his Declaration was drafted entirely by counsel and that he made no changes to it whatsoever. *See* Tr. at 7:17-8:7. Moreover, Hunt did not even send the Declaration to the ERISA Defendants about whom he wrote. *Id.* If counsel do virtually all of the work on a pleading as personal as a sworn Declaration, it is likely that they will do all of the work on other litigation matters as well. Consequently, the ERISA Litigation is no different from any other corporate lawsuit where busy senior officers rely on experienced counsel to pull the laboring oar.

Finally, Debtors' motion is premised on the assumption that there will be massive discovery in the ERISA Litigation, which is clearly not the case. The ERISA Litigation concerns whether the Non-Debtor Defendants breached their fiduciary duties by permitting the Plans to invest in risky Company stock as the Company followed its inexorable path into bankruptcy. The core issue is whether a reasonably prudent fiduciary under ERISA's objective standard would have concluded that the stock of a company headed for bankruptcy was an appropriate investment for the retirement plan assets of rank and file workers, who were largely unsophisticated investors. Since the District Court has allowed only 5 months for fact discovery, the discovery burden here pales in comparison to cases where an injunction has been allowed. In fact, the ERISA Plaintiffs recently served their first document requests on the Non-Debtor Defendants and on SSCC

and SSCE, consisting of just 19 individual requests (the "Document Requests").

The types of records sought primarily relate to the Plans, Plan investment options,

Plan investment performance, and the Company's financial health.

The documents to be produced are easily located and produced – all of them

can be found in only five types of places.  First, a Benefits Group within SSCC's

and SSCE's Human Resources Department maintains all of the documents

concerning administration of the Plans responsive to Document Requests 1, 2, 3, 8,

and 13.  *See* Tr. at 10:11-12:2, 12:11-12:18, 23:4-23:18, 28:11, 30:5-30:14.

Second, Assistant Treasurer Gardner, who is effectively the secretary of the

Administrative Committee (*id.* at 20:19-20:23, 21:12-21:22), keeps all documents

concerning Plan investments responsive to Document Requests 5, 6, 7, and 10.  *Id.*

at 15:24-16:21, 20:20-21:11, 22:11-22:24, 25:14-26:7.  Third, the General Counsel

himself maintains the single page responsive to Document Requests 4 and 12.  *Id.*

at 12:22-12:23, 14:7-15:16.  Fourth, the sixteen Operating Committee members

received copies of reports and analyses of the Company's financial performance

each month that were one foot thick in total, which are responsive to Document

Requests 15 and 16.  *Id.* at 35:16-36:21, 37:17-38:18. Finally, those documents

prepared or reviewed specifically by the Non-Debtor Defendants would likely be

in possession of someone who sent or received the documents.  *Id.* at 39:8-39:9,

40:20-40:22.[18]

---

[18]  With respect to the other document categories, the General Counsel testified that he was wholly
unfamiliar with analyses of the Company Stock Fund or its investments, documents concerning ERISA
§404(c), or minutes or transcripts of meetings between Company employees and securities analysts or
credit rating agencies, which would be responsive to Document Requests 9, 11, and 18. *Id.* at 24:1-24:5,
27:19-28:1, 41:21-41:24.  He did not testify about documents evidencing the Non-Debtor
Defendants' affirmative defenses in the ERISA Litigation, which would be responsive to

Moreover, the Debtors failed to quantify in any meaningful way the volume of documents that are responsive to the Document Requests or to prove that such volume would impose such a burden as to jeopardize Debtors' reorganization efforts. In many instances, they admitted that the volume of documents responsive to a given request was quite minimal (*id*. at 15:9-15:12) or that they had no idea as to the volume (*id.* at 11:9, 12:10, 12:21, 17:5-17:6, 18:10-18:11, 20:19, 26:9).

The Non-Debtor Defendants, with the sole exception perhaps of Gardner, an Assistant Treasurer upon whose constant attention the Debtors' survival would not likely depend, will have little or no involvement in document discovery. In addition, counsel for the ERISA Plaintiffs likely can work out reasonable limits. For example, of the foot of documents sent to the 16 members of the Operating Committee each month (*see* Tr. at 36:7-36:17), the ERISA Plaintiffs need only one person's set of documents, not duplicate copies from all 16 people, and after review of a couple of months of reports from that set, could probably exclude a number of reports that would not be relevant to the ERISA Litigation, thereby reducing production to inches of documents for each month.

If the Non-Debtor Defendants are deposed, ERISA Plaintiffs' counsel will make every effort to schedule the depositions at convenient times so as to minimize any conceivable impact on any day-to-day bankruptcy-related duties. Moreover, given that SSCC and SSCE have a seven-member Executive Committee (of which the Non-Debtor Defendants are only two) and a 16-18 member

Document Request 14. *Id.* at 33:1-33:3. Finally, he testified that he did not know who kept third party analyses of the Company's business or financial condition, responsive to Document Request 19. *Id.* at 42:18-44:15.

Operating Committee (of which the Non-Debtor Defendants are only three) (*id.* at 33:11-35:12), the ERISA Plaintiffs anticipate that one-day depositions of the Non-Debtor Defendants can be scheduled at a time when other senior management can run the business. Taken together, Debtors have not met their substantial evidentiary burden to justify an injunction of the ERISA Litigation that would have the practical effect of denying thousands of retirees the right to seek redress for millions of dollars of retirement losses.

Debtor's reliance on such unfounded claims of speculative harm, generalities as to bankruptcy tasks, and undefined concerns as to discovery burdens fails to justify the extraordinary remedy of issuing a §105 injunction.[19] For example, Debtors have not demonstrated that the Non-Debtor Defendants are the sole individuals uniquely qualified and positioned to handle the specific tasks required of Debtors' bankruptcy,[20] that continuation of the ERISA Litigation would drive away the Non-Debtor Defendants from their employment by the Debtors,[21] that Debtors lack

---

[19] *Morgan v. Kobrin Sec. Inc.,* 649 F. Supp. 1023, 1032 (N.D. Ill. 1986) ("The focus is on the personal misconduct of KSI's directors and employees. Kobrin has not shown the court how this litigation impinges on the bankruptcy proceeding. Kobrin has not defined the interlocking issues which require staying this proceeding. Although much of the potential documentary evidence may be in the hands of the debtor, the trustee will allow supervised access to the documents. Kobrin simply has not met his burden of showing any particular hardship occasioned by this court going forward. In light of the almost certain prejudice to the plaintiffs occasioned by any delay in their suit, Kobrin's motion to stay is denied.").

[20] *See, e.g., In re Codfish Corp.*, 97 B.R. 132, 136 (D.P.R. 1988) (granting §105 injunction because the operation of the debtor "revolves and depends on one man," the non-debtor defendant, who not only kept the debtor in operation but also is one of just 50 people in the world in possession of a zealously guarded trade secret crucial to the operation of the debtor, without which debtor would "immediately crumble and there will not be any probability of rehabilitation"); *In re MacDonald / Assocs., Inc.,* 54 B.R. 865 (Bankr. D.R.I. 1985) (granting stay of litigation against two employees of debtor where testimony conclusively established that they were "the debtors' only executives" and "the only people in management positions with any responsibility or authority," "the next highest-ranking employee [had] less responsibility than a shop foreman," the debtor faced significant start-up problems in the early stages of product development, and the two employees "are and will be required to devote substantial time and effort overseeing not only the day to day affairs of the business, but the bankruptcy proceedings as well").

[21] *See, e.g., In re: TRS, Inc.*, 76 B.R. 805, 809 (D. Kan. 1987) (injunction issued where failure to do so

---

sufficient additional personnel to manage its bankruptcy,[22] that liability cannot be imposed

on the Non-Debtor Defendants in the ERISA Litigation without it being imposed upon the

Debtors,[23] or that discovery would be voluminous, complex and span a period of several

years.[24]

The cases cited by Debtors (*see* Memo at 25-29) are distinguishable and/or do not

support Debtors' argument that the continued prosecution of the ERISA Litigation will

impair Debtors' ability to reorganize in Chapter 11.[25] *In re Johns-Manville Corp.*, 26

B.R. 420 (Bankr. S.D.N.Y. 1983), exemplifies the factually distinguishable mass tort

cases, upon which Debtors rely, that are light years away from this case. There, the

debtor was named in over 11,000 personal injury/property damage suits brought by over

15,500 plaintiffs in 46 states, with 32,000 more suits yet to be filed. *Id.* at 422. The

debtor's insurance carriers had disclaimed coverage and refused to conduct a defense or

---

would have forced the sole managing officer of the debtor to abandon the reorganization effort, file for
bankruptcy, and seek employment elsewhere, thus necessitating the debtor's liquidation); *In re Codfish*, 97
B.R. at 132 (issuing injunction where the one individual indispensible to the debtor's continued operation
would have no incentive to continue in his duties if the fruits of his reorganization efforts would become
subject to a judgment).

[22] *See, e.g., In re Lazarus Burman Associates., L.B.*, 161 B.R. 891, 899-900 (E.D.N.Y. 1993) (granting
§105(a) injunction of litigation against the principals of the debtors, where debtors were general
partnerships owned and controlled solely by those principals, who were the "sole participants" in the
debtors' rehabilitation). *See also, e.g., In re Sudbury, Inc.*, 140 B.R. 461, 463 (N.D. Ohio 1992) (debtor
had a "small staff" of only 21 employees who managed its financial, tax, and business-wide functions, in
addition to overseeing its bankruptcy).

[23] *See, e.g., Sudbury*, 140 B.R. at 463 (two lawsuits to be enjoined, with potential liability exceeding $120
million, alleged fraud based on the misrepresentation of debtors' business and finances in business
information furnished to plaintiffs, such that liability for the non-debtor defendants would necessarily
impose liability on the debtors).

[24] *See, e.g., Sudbury*, 140 B.R. at 463 (discovery in litigation to be enjoined would require examination and
production of voluminous records, pertaining *inter alia* to financial reporting, spanning a number of years).

[25] *Continental* Airlines, 177 B.R. 475 (D. Del. 1993), is distinguished *supra*. As discussed *supra*, in *Uni-
Marts*, 399 B.R. 400 (Bankr. D. Del. 2009), the court actually <u>refused</u> to enjoin or stay an action against a
non-debtor.

to indemnify it, prompting the debtor to file over 20 lawsuits against its carriers. *Id.* Against that backdrop, the court found that 250 lawsuits against the debtor's employees were in reality derivative of identical claims against the debtor and would prompt discovery that would effectively evade a discovery stay in those cases, causing a "massive drain" on the time and energy of key employees involved in the bankruptcy. *Id.* By contrast, here Debtors have presented no evidence that any lawsuits are pending aside from the ERISA Litigation, which is not derivative of any lawsuit against the Debtors and which represents not even a fraction of a fraction of the time and resources commitment at issue in *Johns-Manville*.[26] This case is nowhere near the "unusual circumstance" of massive products liability and personal injury litigation as in *Robins*, *W.R. Grace* and *Johns-Manville*. *See, e.g., All Seasons Resorts, Inc.*, 79 B.R. at 904.

---

[26] Debtors cite numerous other cases involving similarly factually and legally complex "mass torts" and massive debtor exposure to endless waves of time- and resource-consuming personal injury litigation and/or *thousands* of separate indemnification claims. In *A.H. Robins*, 788 F.2d F.2d 994, 1008 (4th Cir. 1986) (cited on p. 17 of the Memo), the record established: "undisputed" indemnity rights, thousands of pending tort actions against non-debtor co-defendants that would trigger indemnification, and "incontestable" impacts on the reorganization, which would have been "frustrated, if not permanently thwarted" if the actions were not enjoined. The three separate *W.R. Grace* decisions concerned an increasing deluge of asbestos personal injury claims against the debtors stemming from their business operations. Against this backdrop, in *W.R. Grace*, 386 B.R. 17 (D. Del. 2008) (*see* Memo at 18), the underlying litigation at core implicated the debtors' conduct and products, and as such, required their participation, and the defendant (a railroad company) intended to pursue "in excess of 1,000 indemnification claims." In *W.R. Grace*, 115 Fed. Appx. 565 (3d Cir. 2004) (*see* Memo at 18), the underlying litigation targeted debtors' worker's compensation carrier, for its role in designing a dust control system that was constructed and operated by debtors, with claims (*e.g.*, conspiracy and aiding and abetting) that implicated the debtors' conduct. *W.R. Grace*, 2004 WL 954772 (Bankr. D. Del. Apr. 29, 2400) is distinguished *supra*. *See also In re Global Indus. Techs.*, 303 B.R. 753 (W.D. Pa. 2004) (cited in the Memo at p. 17) (staying a state court declaratory action regarding the scope of obligations under shared insurance policies, the outcome of which could have resulted in a non-coverage finding that would have directly increased asbestos-related indemnification obligations of the debtor).

## IV. THE DEBTORS DO NOT SATISFY THE RULE 65 STANDARD FOR A PRELIMINARY INJUNCTION

### B. Debtors Do Not Satisfy The Exacting Standards For A Preliminary Injunction

In addition to their failure to prove unusual circumstances, as set forth above, Debtors must meet the requirements of Fed. R. Civ. P. 65, which they have failed to do. Contrary to Debtors' recitation of the law (*see* Memo at 17-18), "[i]nvocation of §105(a) must be reserved for a truly '***extraordinary*** set of circumstances'" and "'is not to be employed as loose cannon...to support otherwise unsupportable claims.'" *In re University Med. Ctr.*, 82 B.R. 754, 757 (Bankr. E.D. Pa. 1988) (collecting cases in which §105 relief was refused by courts), *quoting In re Metro Transp. Co.*, 64 B.R. 968, 974 (Bankr. E.D. Pa. 1986) *and Sinkow v. Latimer (In re Latimer)*, 82 B.R. 354, 364 (Bankr. E.D. Pa. 1988)). *See also In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) (noting, *inter alia*, that §105 does not permit courts to create substantive rights otherwise unavailable under the Bankruptcy Code and vacating §105 injunction extending to non-debtor affiliate companies).[27] Therefore, <u>only</u> when a suit by a third-party against other third-parties "threaten[s] to thwart or frustrate the debtor's reorganization efforts" may bankruptcy courts issue an injunction under 11 U.S.C. §105(a). *In re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003), *quoting In re Granite Partners, L.P.*, 194 B.R. 318,

---

[27] *See also In re Brentano's, Inc.*, 36 B.R. 90, 92 (S.D.N.Y. 1984) ("While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers to issue any order necessary or appropriate to carry out the provision of this title, it is an extraordinary exercise of discretion to use that power to stay a third party action not involving the debtor."); *In re Third Eighty-Ninth Assoc.* 138 B.R. 144, 146 (S.D.N.Y. 1992); *In re Arrow Huss, Inc.*, 51 B.R. 853, 859 (Bankr. D. Utah 1985) ("The burden is on the debtor to clearly establish the necessity for injunctive relief. This will ordinarily require convincing evidence of an adverse impact on the debtor's estate which seriously threatens the debtor's ability to formulate and carry out a plan

337 (Bankr. S.D.N.Y. 1996). *See also In re Medical Asset Mgmt, Inc.*, 349 B.R. 659, 664 (W.D. Pa. 2000) (denying injunction after noting that §105(a) permits a bankruptcy court to enjoin pre-petition creditors from proceeding against non-debtor third parties "where failure to enjoin would jeopardize or adversely affect debtor's reorganization").

"'It is frequently observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) (emphasis original) (assessing whether a §105(a) injunction should issues), *quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).[28]

> To obtain a preliminary injunction in the Third Circuit, the party seeking the injunction must demonstrate "(1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief." … If these two threshold requirements are met, the Court should then consider "(3) whether an injunction would harm the [opposing party] more than denying relief would harm the [movant] and (4) whether granting relief would serve the public interest."

*Id.* at 616-617, *quoting Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002). The injunction requirements are "conjunctive and all of them must be established in order to obtain the relief sought." *In re Provincetown Boston Airline,* 52 B.R. 620, 625 (Bankr. M.D. Fla. 1985).

## B. The Debtors Have Not Demonstrated A Substantial Likelihood Of Imminent Irreparable Harm

The Debtors have completely failed to meet their heavy burden of showing

---

of reorganization.").

[28] *See also In re Continental Air Lines, Inc.,* 61 B.R. 758, 782 (S.D. Tex. 1986) ("'Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing carries the burden of persuasion.'"); *In re Calpine Corp.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (the

irreparable harm, *i.e.* that the failure to enjoin the ERISA Litigation "would embarrass, burden, delay or otherwise impede the reorganization." *Alert Holdings, Inc. v. Interstate Protective Servs., Inc.,* 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992). "In a bankruptcy context, irreparable harm may be discerned if 'the action sought to be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort.'" *Baldwin-United Corp. v. Paine Webber Group, Inc. (In re Baldwin-United Corp.)*, 57 B.R. 759, 768 (S.D. Ohio 1985), *quoting In re Anje Jewelry Co., Inc.*, 47 B.R. 485, 487 (E.D.N.Y. 1983). "Even when it is alleged that irreparable harm to the debtor's reorganization will result it is necessary to present strict proof of the facts and circumstances proving the likelihood of irreparable harm. Speculative and conclusory allegations are clearly insufficient." *Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co.,* 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985). *See also In re Phar-Mor*, 166 B.R. at 62-63 (speculative contention that continuation of a securities litigation could delay debtors' reorganization and plan confirmation, while it "may ultimately be true," "does not does not constitute the type of proof required…[f]or an injunction").

As discussed in greater detail above, *see supra* Section II. A.-C., the ERISA Litigation poses no threat to the estate property of the Debtors or to the Debtors' chances at reorganizing under Chapter 11. Debtors' indemnification obligations are contingent and not absolute, giving rise only to unsecured, pre-petition indemnification claims, and the proceeds of available fiduciary insurance policies are not property of the estate. Debtors have presented no evidence that the ERISA Litigation has, or will, actually

---

balance of hardships must tip "decidedly in the movant's favor").

impact their reorganization, save for a single Declaration of generalities by the Debtors'
General Counsel (no evidence was submitted by the Non-Debtor Defendants themselves).
Moreover, as discussed at length in Section III.B. above, Debtors have grossly overstated
the discovery burden in the ERISA Litigation. Finally, courts routinely refuse to shield
the officers and directors of corporations in Chapter 11 from liability for their own
violations of securities and ERISA laws. For all these reasons, Debtors have failed to
demonstrate that they face a substantial likelihood of imminent irreparable harm.

>    **C.**    **The Balance Of Hardships Favors The ERISA Plaintiffs, Who Would**
>             **Face Substantial Prejudice If The ERISA Litigation Were Enjoined**

The extraordinary relief Debtors seek can be granted only if, on balancing the
interests, the Court finds that they have demonstrated that any purported harm they will
suffer outweighs the clear and substantial prejudice to the ERISA Plaintiffs and the Plans
that would ensue from staying the ERISA Litigation. Contrary to Debtors' argument
(*see* Memo at 30), the balance of hardship decidedly favors the ERISA Plaintiffs, and
the Court should refuse to enjoin the ERISA Litigation. It is axiomatic that justice
delayed is justice denied. Thus,

> [T]he suppliant for a stay must make out a clear case of
> hardship or inequity in being required to go forward, if
> there is even a fair possibility that the stay for which he
> prays will work damage to some one else. Only in rare
> circumstances will a litigant in one cause be compelled to
> stand aside while a litigant in another settles the rule of law
> that will define the rights of both.

*Wedgeworth,* 706 F.2d at 545, *quoting Landis v. N. Am. Co.*, 299 U.S. 248, 266 (1936).

Much of the information relevant to the claims against the Non-Debtor
Defendants in the ERISA Litigation may be obtained only from them. If the
prosecution of the ERISA Litigation is stayed, much of this critical information and

knowledge may well be lost, since human recollection inevitably fades as time passes. Similarly, pertinent documents currently in the possession of the Non-Debtor Defendants might be lost or discarded, even inadvertently. Thus, imposing the requested stay may effectively deny the ERISA and the Class their day in court. *See, e.g., In re Continental Air Lines,* 61 B.R. at 782 (§105(a) injunctions "significantly intrude into the state and federal rights of the target's shareholders"). In addition, delay will likely make it more difficult to deliver the proceeds of any recovery to the ERISA Plaintiffs and the Plans. Employees and retirees move, die, lose records, and the like. Finally, within this economic climate, as Debtors' employees and retiree pensions have collapsed as the Debtors imploded, the employees and retirees have a clear and present need to have the ERISA Litigation resolved. The inability to deliver any recovery to them is by itself a significant "hardship," effectively depriving them of their rights.

For these reasons, Third Circuit courts routinely permit securities fraud and ERISA lawsuits to proceed against non-debtor third parties, such as corporate officers or outside accounting firms. As stated in by the court in *In re Phar-Mor, Inc. Sec. Litig.,* 166 B.R. 57, 62 (W.D. Pa. 1994), in rejecting debtor's request for a §105 injunction:

> [E]njoining the Creditor Actions would abuse the authority provided by §105. We have little doubt that granting a stay of the Creditor Actions would be a boon to the Debtors' reorganization process, but we will not, in furtherance of that goal, trample the rights of the Creditor-Defendants to assert their independent and distinct claims against a non-bankrupt third party.
>
> The Debtors' concern that the continued prosecution of the Creditor Actions could result in a "race to the courthouse" is of no moment to the instant issue. The Code is designed to eliminate a "race to the courthouse" by creditors seeking to file claims against a *debtor*. Here, any "race" that may occur would be for the purpose of lodging claims against a

non-debtor, which is not a bankruptcy concern. Moreover, the fact that the Creditor Actions may result in disproportionate recoveries by certain creditors is also irrelevant. The Code is concerned only with a disproportionate *distribution* of the debtor's estate. The fact that a creditor may gain additional relief from sources other than the property of the estate does not contravene the Code's provisions or policies.

*Id.* at 62.[29]

### D. The Public Interest Would Be Dis-Served If The ERISA Litigation Were To Be Enjoined

The Debtors must set forth facts showing that the issuance of an injunction is not adverse to the public interest.[30] This requires "the balancing of the public interest in a successful bankruptcy reorganization with other competing societal interests." *In re Fowler Floor & Wall Covering Co.,* 93 B.R. 55, 58 (Bankr. M.D. Pa. 1988).

It has been a cardinal principle of bankruptcy law from the beginning that its effects do not normally benefit those who have not themselves 'come into' the bankruptcy court with their liabilities and all their assets.... To violate this principle on the appealing facts of a particular case, where no specific necessity for doing so is set forth, is simply to invite a wholesale restructuring of the expectations of those involved in commercial transactions without any indication from Congress that such a profound change was intended.

*Robbins v. Chase Manhattan Bank, N.A.,* No. 93-0063-H, 1994 WL 149597 at *19- *20 (W.D. Va. Apr. 4, 1994), *quoting In re Venture Properties, Inc.,* 37 B.R. 175, 177 (Bankr. N.H. 1984). Debtors' request to enjoin the ERISA litigation to shield Debtors'

---

[29] The cases cited by Debtors (*see* Memo at 30-31), *W.R. Grace, Sudbury*, and *Continental Airlines*, are readily distinguished and are discussed *supra.*

[30] *See, e.g., In re Costa & Head Land Co.,* 68 B.R. 296, 303-04 (N.D. Ala. 1986) (stating, emphasis original, "The philosophy of the Bankruptcy Act and the 'public interest' do not constitute an absolute and inevitable equation" and "The words 'public interest' are defined in *Black's Law Dictionary* as 'something in which the public, the *community at large*, has some *pecuniary* interest, or some interest by which *their legal rights or liabilities are affected.'").

officers from liability for their violations of ERISA clearly implicates, and offends, the public interest.

Congress passed ERISA to promote the important goal of protecting and preserving the retirement savings of American workers. Given that "[d]efined contribution plans dominate the retirement plan scene today," *LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S. Ct. 1020, 1025 (2008), ensuring that ERISA fiduciaries fully comply with their obligations – including the duty to select and maintain prudent investment alternatives – is of paramount importance in protecting the retirement savings of millions of workers throughout the country. *See also Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1148 (9th Cir. 2000) (ERISA's "most important purpose" was to "assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society.").

Consequently, notwithstanding ongoing corporate bankruptcy proceedings, even in the case of a bankrupt "Fortune 500 Company" like the Debtor (*see* Memo at 27), securities fraud and ERISA class actions <u>routinely</u> go forward against non-debtors – including the debtor's officers and directors – often resulting in large recoveries for the classes at issue. In the case of both *In re Enron Corporation* and *In re WorldCom, Inc.*, two of the largest and most complicated Chapter 11 bankruptcies in history, contemporaneous securities and ERISA litigations, by which class members have already recovered billions of dollars, continued despite the contemporaneous

bankruptcy proceedings.[31]   Both those debtors filed and confirmed plans of reorganization notwithstanding this active civil litigation in which the debtors and their officers and directors participated and provided discovery.  Similarly, in *In re American Continental Corp./Lincoln Savings & Loan Sec. Lit.,* MDL 834 (D. Ariz.), which involved a liquidating estate created by the Chapter 11 plan, the lead plaintiffs received over $275 million in recoverables and $3 billion in verdicts.[32]  In fact, securities and/or ERISA litigations commonly proceed alongside bankruptcy proceedings of the underlying corporation, as was the case with Delta Airlines, Global Crossing, Polaroid, Carter Hawley Hale, and United Airlines, to name just a few.[33]  To enjoin the ongoing prosecution of the ERISA Litigation would not only ignore these lessons of past experience, but would set a very unfortunate and dangerous precedent for the future.

Under the Debtors' theory, all actions against all officers and directors of a company in bankruptcy should be enjoined.  If such expansive protection for non-debtors was intended under the bankruptcy laws, Congress would have expressly provided such protection in the Code, as it did in 11 U.S.C. §§1201 and 1301.  However, no such protection is afforded non-debtors.  That is because such a blanket injunction, which would

---

[31] *See, e.g., New York Employees Ret. Sys. v. Ebbers (In re WorldCom, Inc.),* 293 B.R. 308 (S.D.N.Y. 2003) (permitting securities litigation to proceed against non-debtor defendants therein notwithstanding the debtor's ongoing Chapter 11 proceeding).

[32] *See also, e.g., In re Equity Funding Corp. of America Sec. Lit.,* 438 F. Supp. 1303 (C.D. Cal. 1977) ($60 million investor class settlement despite bankruptcy); *In re King Resource Co. Sec. Lit.,* 420 F. Supp. 610 (D.C. Colo. 1976) ($13 million in total investor settlements despite bankruptcy).

[33] *See also, e.g.,* cases discussed *supra,* including *Brengettys,* 241 F.3d 609 (7th Cir. 2001) (dismissing debtor employer but permitting ERISA class action to continue against employee benefit plans); *Reliance Acceptance Group,* 235 B.R. 548 (D. Del. 1999) (reversing injunction and permitting prosecution of securities litigation by a debtor's shareholders); *In re Quintus Corporation,* Case No. 01-501 (Bankr. D. Del., April 10, 2002) (rejecting request for stay or injunction and permitting securities fraud class action to proceed); *Phar-Mor,* 166 B.R. 57 (W.D. Pa. 1994) (same); *In re Granite Partners,* 194 B.R. 318 (Bankr. S.D.N.Y. 1996) (same); *Duval,* 1990 WL 261364 (N.D. Cal. Oct. 19, 1990) (after severing debtor, permitting securities class action to proceed against non-debtor defendants).

serve to insulate corporate employees from their own misconduct, is inconsistent with the public interest.  Thus, contrary to Debtors' two-sentence, conclusory argument (*see* Memo at 31),[34] the public interest would not be served by enjoining the ERISA Litigation.

## CONCLUSION

For the reasons set forth above, the Debtor's Motion should be denied in all respects.

Dated: October 16, 2009        Respectfully submitted,

**ARCHER & GREINER, P.C.**

By:   **/S/ Charles J. Brown III**

Charles J. Brown III (State Bar # 3368)
**ARCHER & GREINER, P.C.**
300 Delaware Avenue
Suite 1370
Wilmington, DE  19801
Telephone: (302) 777-4350
Facsimile: (302) 777-4352

Robert A. Izard
William Bernarduci
Matthew L. Tuccillo
**IZARD NOBEL LLP**
29 South Main Street
Suite 215
West Hartford, CT  06119
Telephone: (860) 493-6407
Facsimile: (860) 493-6290

---

[34] Debtors cite one case, *Rickel Home Ctrs.*, 199 B.R. 501, for the unremarkable proposition that the public has an interest in having bankruptcies result in successful reorganizations.  *See* Memo at 31.  Clearly, this point alone cannot carry the day.  Were it so, then this final factor in the injunction analysis would uniformly tip in favor of a debtor who aspires to reorganize.

Charles R. Watkins
**FUTTERMAN HOWARD WATKINS**
**WYLIE**
**& ASHLEY, CHTD.**
122 S. Michigan Ave., Suite 1850
Chicago, IL  60603
Telephone: (312) 427-3600
Facsimile:  (312) 427-1850

Major Khan
**MAJOR KHAN LLC**
20 Bellevue Terrace
Weehawken, NJ 07086
Telephone: (646) 546-5664
Facsimile (646) 546-5755

*Counsel to the ERISA Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Charles J. Brown III, hereby certify that on the 16th day of October, 2009, a true copy of the foregoing was served via the Court's ECF service and via first-class mail, postage prepaid, to the following:

James F. Conlan
Brian J. Gold
Matthew A. Clemente
Dennis M. Twomey
James D. Weiss
Bojan Guzina
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

a*nd*

Robert S. Brady
Edwin J. Harron
Edmon L. Morton
Matthew B. Lunn
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Attorneys for Debtors and Debtors in Possession*

**/S/ Charles J. Brown III**
Charles J. Brown III
